Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



## MEMORANDUM OPINION

No. 04-10-00810-CR

Rafael **PEREZ-PERAZA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 5, Bexar County, Texas
Trial Court No. 276864
Honorable Dick Alcala, Judge Presiding[1]

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
    Sandee Bryan Marion, Justice
    Steven C. Hilbig, Justice

Delivered and Filed:  January 18, 2012

AFFIRMED

After a bench trial, Rafael Perez-Peraza was found guilty of theft and sentenced to a term of ten months in jail. On appeal, he argues (1) the evidence was insufficient to sustain his conviction; (2) the trial court erred in refusing to grant his motion for directed verdict; (3) the trial court erred in considering a hearsay statement in a PSI report, thus violating his right to confrontation; and (4) the trial court erred in presiding over the punishment hearing. We affirm.

---

[1] The Honorable Michael LaHood presided over the guilt-innocence phase of trial. The Honorable Dick Alcala, a visiting judge, presided over the punishment hearing and signed the trial court's judgment.

First, Perez-Peraza argues there is insufficient evidence to prove that he unlawfully appropriated property from Wal-Mart or that he took property with intent to deprive Wal-Mart of such property without its consent. In a federal due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, No. PD-1126-10, 2011 WL 4577870, at *4 (Tex. Crim. App. Oct. 5, 2011). The court of criminal appeals has explained that this standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence." *Adames*, 2011 WL 4577870, at *4. Therefore, on appellate review, we determine whether based on "the cumulative force" of all the evidence the necessary inferences made by the trier of fact are reasonable. *Id.*

At trial, two Asset Protection employees of Wal-Mart were the State's only witnesses. Rudolph Roberts testified that as he was walking the floor of Wal-Mart looking for shoplifters, he noticed Perez-Peraza, Perez-Peraza's female companion, and a four-year-old boy. According to Roberts, he had received an email from the Loss Prevention Department that an identically-dressed couple, who matched the description of Perez-Peraza and his female companion, and who were also accompanied by a four-year-old boy, had just stolen from another Wal-Mart. When Roberts noticed the couple, they were in the jewelry department. Roberts testified that Perez-Peraza would point to what he wanted his female companion to pick up and she would then grab the merchandise and put it next to her purse. Roberts saw that the female had clothes draped to cover her purse and that she was putting a lot of rings next to her purse. Perez-Peraza then left his female companion, but the pair continued to communicate via walkie-talkies. While the couple was separated, Roberts saw the female cut the tags and security devices off the rings

and put the rings in her purse. She then met Perez-Peraza inside the store several more times before she left the store with the child. She was stopped outside the store in the parking lot. According to Roberts, she took the bag of rings and threw them underneath a truck, claiming that she did not have anything. After Perez-Peraza's female companion was stopped, Roberts testified that Perez-Peraza came up to him and said "to take the charges off of his wife, or girlfriend, or whatever. He said that he was the one [who] stole all the merchandise, so that he can get – so that his wife can leave with the child."

Roland Drury, the Asset Protection Coordinator, also testified at trial. He stated that he got a call from Roberts that two suspects were working together. Drury went to the jewelry department and watched a male, later identified as Perez-Peraza, point out some rings to a female. Drury followed Perez-Peraza while Roberts followed the female. Drury saw Perez-Peraza communicating with a walkie-talkie and heard Perez-Peraza talking with someone. According to Drury, he heard Perez-Peraza ordering the person to take as many rings as she could get and specifying to the person that the rings should be the ones Perez-Peraza had pointed out to her. Drury testified that he did not understand with whom Perez-Peraza was talking until he spoke with Roberts on his cell phone. While talking to Roberts on his cell phone, Drury realized Perez-Peraza was speaking to his female companion. Drury told Roberts that he heard Perez-Peraza state he wanted more rings. Roberts, who was following the female, responded that the female "was grabbing them now." Drury told Roberts to stay with the female while he continued to follow Perez-Peraza. Drury saw Perez-Peraza then meet up with the female two to three more times. According to Drury, "They would go back over together and start talking about merchandise, what he has in the cart, you know, what she has and, you know, what she has on her. . . ." When the couple met at the toy department, Drury saw Perez-Peraza transfer everything

from his shopping cart to the female's cart. The couple then split up again. As Perez-Peraza had given all his merchandise to the female, Drury stayed with Roberts, and both men watched the female. When she left the store, Drury and Roberts stopped her and took her back to their offices. They could hear Perez-Peraza ask the female where she was on her walkie-talkie. Drury then left in search of Perez-Peraza. Not able to find Perez-Peraza, Drury went back to his office, at which point he saw that Perez-Peraza was at his office. Drury told both Perez-Peraza and the female that the female had been stopped for shoplifting and that he believed Perez-Peraza was "an accessory per Wal-Mart policy." According to Drury, Perez-Peraza then took "the full blame for it" and said that he had done "it all."

The testimony of both Drury and Roberts is sufficient to show that Perez-Peraza was a party to the theft. *See Beier v. State*, 687 S.W.2d 2, 4 (Tex. Crim. App. 1985); *Armstead v. State*, 977 S.W.2d 791, 797 (Tex. App.—Fort Worth 1998, pet. ref'd). We therefore hold that the evidence was sufficient to support his conviction.

In his second issue, Perez-Peraza argues "the trial court abused its discretion in refusing to grant the motion for directed verdict based upon the destruction of potentially exculpatory evidence, in violation of the Due Course of Law provisions of the Texas Constitution."[2] Specifically, Perez-Peraza complains that the State should have provided Perez-Peraza with security footage from Wal-Mart, which Perez-Peraza argues might be exculpatory. Raising this issue, generally referred to as spoliation of evidence, in the context of the denial of a directed verdict, however, is problematic because a challenge to the denial of a motion for directed verdict is treated on appeal as a challenge to the sufficiency of the evidence. *See Williams v.*

---

[2] We note that in a heading on page twelve of his brief, Perez-Peraza refers to a motion to compel production of evidence, and a motion for new trial and motion in arrest of judgment. However, there are no such motions contained in the record, and in fact, in his statement of the case, Perez-Peraza states that "[n]o motion for new trial was filed." Thus, it appears this reference in his brief to a motion to compel and a motion for new trial and in arrest of judgment was made in error.

*State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *Tovar v. State*, 165 S.W.3d 785, 789 (Tex. App.—San Antonio 2005, no pet.). Cases dealing with spoliation, several of which Perez-Peraza relies on in his brief, illustrate the ways in which this issue has been properly preserved for appellate consideration. *See California v. Trombetta*, 467 U.S. 479, 482 (1984) (spoliation issue presented in motion to suppress); *Pena v. State*, 285 S.W.3d 459, 462-63 (Tex. Crim. App. 2009) (spoliation issue presented in objection to evidence admitted at trial); *Ramirez v. State*, No. 04-07-00746-CR, 2008 WL 4595015, at *1 (Tex. App.—San Antonio 2008, pet. ref'd) (spoliation issue presented in motion to quash indictment and refusal to grant requested jury instruction); *Salazar v. State*, 185 S.W.3d 90, 91 (Tex. App.—San Antonio 2005, no pet.) (spoliation issue presented in motion to suppress). Thus, even assuming there was evidence of spoliation in this case,[3] it has not been presented properly for appellate review.

Perez-Peraza next argues the trial court erred in considering a hearsay statement made in a PSI report, which was relied on by the trial court at punishment, in violation of his constitutional right to confrontation pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004). Specifically, at the punishment hearing, Perez-Peraza objected to a portion of the PSI report that stated Perez-Peraza confessed at the scene to Wal-Mart employees. The State responds that (1) the statement made in the PSI report was not hearsay because it was an admission by a party-opponent under Texas Rule of Evidence 801(e)(2)(A), and (2) Perez-Peraza's right to confrontation was not violated as he had the opportunity at trial to confront and cross-examine the two Wal-Mart employees who testified Perez-Peraza confessed at the scene to having committed the crime. We agree and find no error by the trial court.

---

[3] At trial, Roberts testified that Wal-Mart had security recording equipment. However, he did not know whether the events at issue had been recorded or whether anyone had ever viewed such a tape. Drury testified that Wal-Mart did have security cameras, but the cameras did not cover the entire store. He estimated sixty percent of the store was surveyed by cameras. He did not recall seeing any videotape of this incident and did not know whether one had been saved.

In his final issue, Perez-Peraza argues the "trial court erred at punishment, since the trial court was not the same judge who heard the guilt-innocence phase of trial, which created a punishment hearing based on a 'paper hearing' because all the trial court could have relied on was the hearsay report by Wal-Mart, any transcription of the guilt phase, and statements by counsel, resulting in a violation of due process." However, as pointed out by the State, Perez-Peraza did not object at the punishment hearing to having a different judge assess punishment than the one who heard the guilt-innocence portion of trial. Thus, he has failed to preserve any error for appeal. *See* TEX. R. APP. P. 33.1.

We therefore affirm the judgment of the trial court.

Karen Angelini, Justice

DO NOT PUBLISH