Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




## MEMORANDUM OPINION

No. 04-11-00225-CR

Jesse **SARABIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 274th Judicial District Court, Guadalupe County, Texas
Trial Court No. 10-2128-CR
Honorable Gary L. Steel, Judge Presiding

Opinion by:   Karen Angelini, Justice

Sitting:   Karen Angelini, Justice
Sandee Bryan Marion, Justice
Phylis J. Speedlin, Justice

Delivered and Filed:  July 5, 2012

AFFIRMED

Jesse Sarabia was found guilty of the felony offense of driving while intoxicated with a child passenger and was sentenced to 350 days in jail. Sarabia appeals, arguing that the evidence is legally insufficient to support his conviction. We affirm.

### BACKGROUND

At trial, there was testimony that on July 16, 2010, Sarabia was stopped by police in the parking lot of a convenience store in Luling, Texas. Sarabia was driving a pick-up truck; Miguel

Alarcon, Sarabia's friend, was sitting in the passenger seat; and Alarcon's minor son was in the back seat. According to Officer Jack Nickell, he stopped the pick-up truck Sarabia was driving because the police had received "multiple calls in reference to a – to a possible reckless driver, and a possible hit and run vehicle with front-end damage." The pick-up truck being driven by Sarabia, which had front-end damage, matched the description of the pick-up truck reported. According to Officer Nickell, when he approached the driver's side window of the truck, he noticed the "strong odor of an alcoholic beverage on [Sarabia]'s breath, [his] watery, glassy eyes; [and] the slurred speech." Officer Nickell saw a thirty-two ounce bottle of beer "that had been knocked over and was still spilling beer out of the open container." The beer was found on the "center floorboard with the open end of it facing the driver's side where it was leaking out." Officer Michael Mercer, who was also involved in the stop, likewise testified that Sarabia's speech was slurred. Officer Mercer testified that Sarabia "was very erratic. His speech and the way he was talking was slurred." Sarabia told the officers that he was in a hurry because a family member was sick. He claimed that he owned the vehicle and that the front-end damage had been there for a while. A few minutes later, Sarabia changed his story and said that "he was trying to hurry to get to Seguin, that he was trying to pick up his boss." He then "went back to state that he had a sick family member in Seguin." Sarabia admitted to having drunk three or four beers. According to Officer Mercer, Sarabia was repetitive in his responses and kept asking the officers to just let him go. Both Officer Mercer and Officer Nickel believed that Sarabia was intoxicated.

The officers found in the pick-up truck "what appeared to be a crack pipe with pieces of wool pads shoved inside it and signs of burn marks along the length of the pipe." Officer Nickell testified that he had training in drug recognition and interaction, and that based on his training and experience, the pipe was consistent with methamphetamine or crack. Underneath the

passenger seat in the pick-up truck Officer Mercer found a handgun. When they reached the police station, Officer Nickell administered sobriety tests on Sarabia. Sarabia failed the tests.

Later, police determined that the pick-up was not registered to Sarabia, but was instead registered to Broderick Grissett, who lived in Houston, Texas. Grissett testified that the day before the incident, he decided to pick up a prostitute on a street in Houston. He then drove her a few blocks so that she could pick up her minor son. All three then went to a motel, and when Grissett went inside the motel lobby to rent a room, he left his pick-up truck running with the keys in the ignition. The woman and her son remained in the pick-up truck. When Grissett came back outside, the pick-up truck was gone. Grissett later got a call that his pick-up truck had been recovered in Luling. Grissett testified that the handgun found in the pick-up truck belonged to him. However, according to Grissett, neither the can of beer nor the pipe belonged to him.

Kenneth Trucker testified at trial that he was driving approximately sixty-five miles per hour on the interstate, traveling from Houston to San Antonio, when he saw two trucks pass him "like [he] was standing still." He thought the trucks may have been going over one hundred miles per hour. About fifteen to twenty minutes later, he saw that the trucks had stopped on the side of the road. One of the trucks, a pick-up truck, then passed him again, speeding at around a hundred miles per hour. As the pick-up truck passed him, it "kind of stopped right in front of [him] and [he] noticed two Hispanic males and a young kid in the car." "The young kid was right in the middle and they were kind of moving around in the car – the truck . . . moving in the truck erratically." The truck then pulled off the road again. Another fifteen to twenty minutes later, the truck sped past him again for a third time at a high rate of speed. According to Trucker, there was a travel-trailer that "was broken down on the side of the road." The pick-up truck, once again, pulled off the road. It then began backing up to reach the trailer. When Trucker stopped at

a convenience store in Luling, he noticed the pick-up truck was there and saw that the men he had seen previously in the pick-up truck were now in a police squad car. Trucker stopped and gave the police his statement.

The passenger of the pick-up truck, Alarcon, testified at trial. According to Alarcon, he and Sarabia were headed to San Antonio in an attempt to find some work in construction. Alarcon's nine year-old son was with them. Alarcon testified that a woman friend of his had lent them the pick-up truck. Sarabia drove the pick-up truck as they left Houston. Twenty miles from Luling, they stopped the pick-up truck so his son could urinate. Alarcon then began driving and admitted that he was driving at a high rate of speed. He then stopped the pick-up truck in Luling, and Sarabia drove the pick-up truck out of the convenience store parking lot. Alarcon claimed that the can of beer was his.

The State introduced a video recording of the stop in evidence. In the video, Sarabia states that the damage to his pick-up truck had been there for a long time and that he had been trying to fix it. He first states that he is on his way to see family and then states that he is going to pick up his boss. Later, he says that he is going to pick up his friends. He tells the officer that he was buying gas so that he could go home. He says several times that he just wants to go home. He also tells the officer that he knows he smells like alcohol and admits that he drank three or four beers. He says, "If you want me to be sober, I'll be sober. I'll even go to sleep, just let me go." Sarabia states, "I know I shouldn't have been driving. . . . I know I've been drinking, but I wasn't drinking that much – three or four beers." When he tells the officer that he is very stressed, the officer responds that "drinking and driving is never the answer, and the truck smells like marijuana too." Sarabia replies that he has been stressed out.

## DISCUSSION

On appeal, Sarabia claims that there is legally insufficient evidence to support his conviction because there was no evidence to prove that he was intoxicated or, alternatively, any evidence to prove a temporal link between his intoxication and driving. In a federal due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). The court of criminal appeals has explained that this standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence." *Adames*, 353 S.W.3d at 860. Therefore, on appellate review, we determine whether based on "cumulative force of all the evidence" the necessary inferences made by the trier of fact are reasonable. *Id.* We conduct this constitutional review by measuring the evidentiary sufficiency with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.*

A person commits the offense of driving while intoxicated "if the person is intoxicated while operating a motor vehicle in a public place."[1] TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2011). "Intoxicated" is defined as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body," or "having an alcohol concentration of 0.08 or more." *Id.* § 49.01(2)(A), (B) (West 2011). Here, there is evidence to support that Sarabia was intoxicated at the time he was stopped. The officers testified that Sarabia gave conflicting stories and kept repeating himself. They testified that he

---

[1] Sarabia does not dispute that there is sufficient evidence that he was operating a motor vehicle in a public place with a child passenger.

smelled of alcohol, his eyes were watery and glassy, and his speech was slurred. They testified that they saw an open container of beer in the pick-up truck and that they found a pipe consistent with using illegal drugs. Sarabia admitted that he had consumed three or four beers and should not have been driving. He told the officers that if they wanted him to be sober, he would act sober.

On appeal, Sarabia argues that there was evidence the beer belonged to Alarcon and that the smell of alcohol emanated from Alarcon. Sarabia argues that he does not appear to be intoxicated on the video admitted in evidence. He emphasizes that the field sobriety tests were not administered until he was transported to the police station. Sarabia criticizes those tests because they were not being videotaped, and he is critical of the fact that this was the first time Officer Nickell had administered the tests outside a classroom setting. Sarabia further argues that the admissions he made on the videotape are not admissions at all. He contends that "[i]t is clear from the video, not that he was confused, but that he was extremely nervous and trying to figure out what would get him released." However, these arguments are all credibility questions for the jury as trier of fact. When contradictory testimonial evidence turns on an evaluation of credibility and demeanor of the witnesses, we must defer to the jury. *See Johnson v. State*, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000). We, therefore, hold that the evidence is sufficient to support Sarabia's conviction and affirm the judgment of the trial court.

Karen Angelini, Justice

Do not publish