

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1126-10

### JUAN ELIGIO GARCIA ADAMES, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### AND DISCRETIONARY REVIEW ON COURT'S OWN MOTION
### FROM THE THIRTEENTH COURT OF APPEALS
### HIDALGO COUNTY

**JOHNSON, J., delivered the opinion for a unanimous Court.**

## O P I N I O N

Appellant was charged by indictment with one count of capital murder.[1] The state did not

seek the death penalty. At trial, the trial judge gave the jury a general instruction as to the law of

parties, and then gave the jury the following charge:

> Now, if you believe from the evidence beyond a reasonable doubt that on or about
> October 23, 2003, in Hidalgo County, Texas, the defendant, Juan Eligio Garcia
> Adames, did then and there intentionally cause the death of an individual, namely
> Ann Marie Garcia, by strangulation with a shoe lace and the defendant was then and
> there in the course of committing and attempting to commit the offense of aggravated

---

[1] TEX. PENAL CODE § 19.03.

kidnapping of Ann Marie Garcia; then you will find the defendant guilty of the offense of capital murder as charged in the indictment.

Or, alternatively, if you find from the evidence beyond a reasonable doubt that on or about October 23, 2003, in Hidalgo County, Texas, Luis Carlos Mares did then and there intentionally cause the death of an individual, namely, Ann Marie Garcia, by strangulation with a shoelace and Luis Carlos Mares was then and there in the course of committing and attempting to commit the offense of aggravated kidnapping of Ann Marie Garcia, and the defendant, Juan Eligio Garcia Adames, then and there knew of the intent, if any, of the said Luis Carlos Mares to commit the aggravated kidnapping of Ann Marie Garcia, and the defendant acting with the intent to promote or assist Luis Carlos Mares in the commission of the aggravated kidnapping solicited, encouraged, directed, aided, or attempted to aid Luis Carlos Mares in the commission of the aggravated kidnapping by lending Luis Carlos Mares his car or by injecting the victim with heroin or by driving Luis Carlos Mares and the victim to the murder scene, then you will find the defendant guilty of the offense of capital murder as charged in the indictment.

Unless you so find beyond a reasonable doubt or if you have a reasonable doubt thereof, you will acquit the defendant and say -- of the offense of capital murder.[2]

The jury convicted appellant, and the trial court automatically sentenced appellant to life imprisonment without parole. On appeal, the Thirteenth Court of Appeals found the evidence to be legally sufficient to support appellant's conviction as a party to the offense of capital murder, but that the jury charge was erroneous as the application paragraph did not include instructions necessary for the jury to find Adames guilty as a party.[3] "The actual charge at trial charged him with that offense [capital murder] as a primary actor but, as a party, only with respect to the underlying aggravated kidnapping."[4] The court of appeals reversed the judgment and remanded the case to the trial court for further proceedings. This Court granted part of appellant's petition for discretionary review in

---

[2] XXVIII R.R. at 10–11.

[3] *Adames v. State*, No. 13-07-00303-CR, 2010 Tex. App. LEXIS 5786 (Tex. App.—Corpus Christi, pet. granted) (mem. op., not designated for publication) (citing *Wooley v. State*, 273 S.W.3d 260, 268 (Tex. Crim. App. 2008)).

[4] *Adames*, 2010 Tex. App. LEXIS 5786, at *15.

order to determine whether the court of appeals erred in refusing to review appellant's issues numbers 2-4[5] regarding legal insufficiency under the Due Process Clause of the 14th Amendment to the United States Constitution, as required by *Jackson v. Virginia*.[6] This Court granted an additional ground, on its own motion, to decide whether the court of appeals erred in failing to distinguish between a sufficiency review under *Malik*,[7] an independent state-ground for review, and *Jackson*, a federal constitutional review. Finding that the court of appeals did not err, we affirm the judgment of the court of appeals.

**Facts**

Luis Carlos Mares ("Huicho") and Rick Velasquez, both members of the Mexican Mafia, went to the home of Reynaldo Saenz on October 22, 2003, in order to rob him. Saenz was storing 3,000 pounds of marijuana in his house for an acquaintance in Mexico. The victim, Ann Marie Garcia, was partying at Saenz's house when Saenz heard car doors slamming outside between 11:30 p.m. and midnight. Saenz went outside to see who had arrived, when he encountered two men wearing ski masks and holding guns. One of the men pointed a gun at Saenz's head and led him inside the house. Inside, one of the gunmen pointed his gun at the victim and motioned for her to

---

[5] Appellant's issues numbers 2-4 in the court of appeals were: (2) legally insufficient evidence exists under the Due Process Clause of the 14th Amendment of the United States Constitution to support the guilty jury verdict; (3) The Due Process Clause of the 14th Amendment of the United States Constitution prohibits this court from using, in its sufficiency review, the standard set out in Tex. Penal Code § 7.02 because its statutory standard is absent from the jury charge that purportedly authorized conviction; (4) The Due Process Clause of the 14th Amendment of the United States Constitution prohibits this court from using in its sufficiency review the standard set out in Tex. Penal Code § 19.02(b)(3) because its statutory standard is absent from the jury charge that purportedly authorized conviction.

While appellant cites the Texas felony-murder statute in his argument number four in the court of appeals, appellant was indicted and convicted under the felony-capital-murder statute, Tex. Penal Code § 19.03(a)(2).

[6] *Jackson v. Virginia*, 443 U.S. 307 (1979).

[7] *Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997).

get up. She looked scared and complied with the gunman. The men bound Saenz's feet, hands, and mouth with duct tape, put him on the kitchen floor, kicked him, and asked him where he was storing the marijuana.[8] One of the men stayed with Saenz in the kitchen while the other followed the victim down the hall to where the marijuana was stored. Saenz did not see the victim again, but she was not there after the men left and she left several personal items at his home. Before leaving, one of the gunmen took off his ski mask and pointed an automatic pistol at Saenz's head.

In his written statement, appellant told Rafael Garza, an investigator at the Sheriff's Department of Hidalgo County, that on the morning of October 23, 2003, between 2:00 a.m. and 3:00 a.m., Huicho Mares called appellant and told him to go to Rick Velasquez's house. Earlier in the night of October 22, 2003, appellant had lent his Yukon truck to Mares, Velasquez, and a young guy nicknamed "Cricket." When appellant got to Velasquez's house, Mares and Velasquez informed him that they had stolen about 1,800 pounds of marijuana from a house in Starr County. They had a girl with them, and Mares told appellant that they had to bring her with them because she recognized him. Appellant stated that Velasquez gave him heroin and told him to inject it into the girl so that she would die, but he only injected her with a little of it and injected the rest into himself. He then got into the driver's seat of the Yukon, Cricket got in the passenger seat, and Mares got into the back seat with the girl, who was now unconscious. While he was driving, he saw Mares having sex with the unconscious girl and then strangle her with something. Appellant could not see what Mares was using to strangle her because he was driving.[9] As appellant was driving by a canal

---

[8] The chronological order of these actions is unclear in Saenz's trial testimony.

[9] This information is contained in appellant's statement to the police and does not reveal how he was able to see the sexual assault and strangulation. Appellant did not testify, so the trial record also fails to reveal how he was able to see the sexual assault and strangulation.

towards Mercedes, Mares told him to stop the vehicle. When he did, Mares threw the girl out of the truck.

The victim's body was found in a remote area along a canal on the outskirts of Edcouch, Texas, at around 10:53 a.m. on October 23, 2003. The victim was dead when found, was clothed but without shoes, and had a shoelace tied tightly around her neck. A pair of light blue tennis shoes was found a few yards away with the shoelace missing from one of the shoes. An autopsy conducted later that evening by Dr. Fulgencio Salinas determined that the cause of death was asphyxia by ligature strangulation and that the victim died within the previous 24 hours. Further, Dr. Salinas determined that there was a significant amount of cocaine and heroin metabolites in the victim's body, but that these substances were not the cause of death.

### The Court of Appeals

The court of appeals conducted a legal- and factual-sufficiency review of the evidence presented at trial, measuring the evidence against the elements of the offense as defined by the hypothetically correct jury charge.[10] Based upon its review, the court of appeals held that the evidence was legally insufficient to support appellant's conviction as a primary actor in light of the evidence that the cause of death was asphyxia by ligature strangulation and the lack of evidence that appellant was the one that strangled the victim.[11] However, the court of appeals found the evidence legally sufficient to support appellant's conviction under the law of parties.[12] Additionally, the court held that the independent evidence was sufficient to show the corpus delicti of both the murder and

---

[10] *Wooley*, 273 S.W.3d at 267–68.

[11] *Adames*, at *17.

[12] *Id.* at *17–18.

the underlying felony, and therefore, the evidence was factually sufficient to support the conviction.

This Court subsequently held that there is no meaningful distinction between the legal-sufficiency standard under *Jackson v. Virginia*,[13] and the *Clewis v. State*[14] factual-sufficiency standard.[15] Thus, the *Jackson* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt."[16] The court of appeals applied a *Jackson* evidentiary-sufficiency review, so there is no need to remand this case for re-analysis under *Brooks*.

Appellant contends that the court of appeals failed to distinguish between a sufficiency review under *Malik*, an independent state-ground review, and *Jackson*, a federal constitutional review, when it analyzed the hypothetically correct jury charge in its sufficiency review. Appellant sought only a federal constitutional review and argues that, by using the *Malik* hypothetically correct jury charge, the court of appeals did not review appellant's claim of legal insufficiency. Instead, appellant asserts, the correct federal due-process review requires the appellate court to measure the sufficiency of the evidence against the jury charge as submitted to the jury. Had the court of appeals used the erroneous jury charge submitted to the jury, it would have found the evidence legally insufficient as submitted and ordered a judicial acquittal.

Appellant is correct that the application paragraph in the jury charge submitted by the trial

---

[13] *Jackson*, 443 U.S. 307.

[14] *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996) (overruled by *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)).

[15] *Id. at* 912.

[16] *Id.*

court was erroneous in its instruction regarding the law of parties as applied to the offense of capital murder. As given, the charge allowed for appellant's conviction as the primary actor of capital murder, but allowed for appellant's conviction as a party only to the underlying aggravated kidnapping. The court of appeals recognized this error when it noted, "There is a due process rule, . . ., prohibiting us from affirming a conviction under a theory that was not presented to the jury."[17] However, appellant conflates the jury charge error with the federal legal-sufficiency standard and confuses sufficiency of the evidence, a due-process doctrine, with the due-process problem of notice that was presented in *McCormick v. United States*,[18] *Dunn v. United States*,[19] and *Cole v. Arkansas*.[20] The *McCormick/Dunn/Cole* rule applies only when a defendant is convicted on a charge that was neither alleged in an indictment nor presented to the jury, as the defendant is then not given sufficient notice as to the specific charge.[21] "It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made."[22] Here, appellant was given notice in the indictment that he was charged with the offense of capital murder. The state presented evidence of that offense, and the jury received instructions on that offense, albeit imperfect as applied to the facts of this case.

---

[17] *Adames*, at *15.

[18] 500 U.S. 257 (1991).

[19] 442 U.S. 100 (1979).

[20] 333 U.S. 196 (1948) (citing *De Jonge v. Oregon*, 299 U.S. 353, 362 (1937)).

[21] *Dunn*, 442 U.S. at 106.

[22] *Cole*, 333 U.S. at 201.

This is a case of jury-charge error distinct from an evidentiary insufficiency;[23] appellant was convicted on a theory, guilt as a party, that was not presented to the jury, as opposed to a charge for which he was never tried.

### Sufficiency of the Evidence Standard of Review

In a federal due-process evidentiary-sufficiency review, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[24] This standard recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence.[25] On review, this Court determines whether the necessary inferences made by the trier of fact are reasonable, based upon the cumulative force of all of the evidence.[26] We conduct this constitutional review by measuring the evidentiary sufficiency with "explicit reference to the substantive elements of the criminal offense as defined by state law."[27] In *Malik*, this Court set forth the state-law standard for ascertaining what those elements are: the elements of the offense are to be defined by the hypothetically correct jury charge which, for that particular case,[28] "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately

---

[23] *See Wooley*, at 269 n.13.

[24] *Jackson,* at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[25] *Id*.

[26] *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).

[27] *Jackson*, at 324.

[28] *Malik*, 953 S.W.2d at 240; *Fuller v. State*, 73 S.W.3d 250, 252 (Tex. Crim. App. 2002).

describes the particular offense for which the defendant was tried."[29]

Appellant argues that the *Malik* sufficiency standard is "a purely state law standard that is foreign to federal constitutional norms"[30] and does not apply to a constitutional evidentiary-sufficiency review. Instead, appellant asserts, the correct *Jackson* review looks at the jury charge submitted to determine if the evidence was legally sufficient to meet the elements of that charge. For support, appellant points to *Fuller*, in which this Court clarified that "*Gollihar's*[31] standard of measuring evidentiary sufficiency against the 'elements of the offense as defined by the hypothetically correct jury charge for the case' is clearly not the same as the *Jackson* standard of measuring evidentiary sufficiency against the 'substantive elements of the criminal offense as defined by state law.'"[32] The two standards are different, and appellant misses the distinction between them.

Both the state and federal standards draw the elements of the offense, against which we measure the sufficiency of the evidence, from the hypothetically correct jury charge for the case. They diverge, however, in distinguishing between "substantive elements," the only elements to be used in a *Jackson v. Virginia* analysis, and *Gollihar's* "elements of the offense as defined by the hypothetically correct jury charge." The hypothetically correct jury charge may include elements that

---

[29] *Malik*, at 240.

[30] *Fuller*, 73 S.W.3d at 252.

[31] In *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001), this Court decided that, under *Malik*, evidentiary sufficiency should be measured against the "elements of the offense as defined by the hypothetically correct jury charge for the case," but rejected *Malik* as a federal constitutional decision. *Gollihar* further rejected the limitation that the "hypothetically correct jury charge" applied only in sufficiency analyses involving a jury-charge error; rather, it controls all sufficiency of the evidence.

[32] *Fuller*, at 252.

must be plead in the charging instrument under Texas procedural rules, such as the manner and means of an offense,[33] but which lie outside of the Texas Penal Code and are not "substantive elements as defined by state law" for purposes of a *Jackson* review.

In harmonizing Texas's sufficiency-of-the-evidence standards with federal standards, this Court overruled the *Benson/Boozer* line of cases, in which evidentiary sufficiency was to be measured by the jury charge actually given.[34] *Malik* and its progeny, *Gollihar*, *Fuller*, and *Byrd,* made clear that an appellate court does apply the *Jackson* standard of review to the hypothetically correct jury charge.[35]

**Analysis**

The court of appeals applied the proper standard in conducting its evidentiary-sufficiency review and correctly found that the evidence was legally insufficient to support appellant's conviction as a primary actor, but legally sufficient to support his conviction as a party.[36] While the parties theory was not plead in the indictment, both state and federal law specify that due process does not require a defendant's culpability as a party to the offense to be plead in the charging instrument.[37]

---

[33] *See Rodriguez v. State*, 18 S.W.3d 228, 232 (Tex. Crim. App. 2000) (indictment alleging intoxication "by alcohol" precluded jury instruction authorizing conviction for alternative theory of intoxication by alternate means of "alcohol, a drug, or a combination").

[34] *Malik*, at 239–240. *See Boozer v. State*, 717 S.W.2d 608 (Tex. Crim. App. 1984), *overruled by Malik*; *see also Benson v. State*, 661 S.W.2d 708 (Tex. Crim. App. 1982) *overruled by Malik*.

[35] *Malik*, at 240; *see also Gollihar*, 46 S.W.3d at 257; *Fuller*, at 252–253; *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011).

[36] *Adames*, at *17–18.

[37] TEX. PENAL CODE § 7.01(c); *United States v. Osborne*, 286 F. Supp. 2d 891, 902 (E.D. TN 2003) (citing *Standefer v. United States*, 447 U.S. 10 (1980), and *United States v. Dunne*, 324 F.3d 1158 (11th Cir. 2003)).

Although the jury charge included a general instruction on the law of parties, it did not properly apply the law to the elements of this specific capital-murder case: aggravated kidnapping and murder. In Texas, a person is guilty of the offense of capital murder if "the person commits murder as defined under Section 19.02(b)(1) and the person intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, obstruction or retaliation, or terroristic threat."[38] A person commits murder under section 19.02(b)(1) when the person "intentionally or knowingly causes the death of an individual."[39] A person is a party to an offense if "the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both."[40] Finally, a person is criminally responsible for the conduct of another if, "acting with the intent to promote or assist in the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . .."[41]

Applying the law of parties to the felony capital-murder statute, with kidnapping as the underlying felony, a person is criminally responsible as a party to the offense of capital murder if, acting with the intent to promote or assist in the commission of that kidnapping by another person, and that other person intentionally commits murder in the course of committing or attempting to commit that kidnapping, the person solicits, encourages, directs, aids, or attempts to aid the other person to commit the kidnapping and murder. The court of appeals applied the facts of this case to

---

[38] TEX. PENAL CODE § 19.03(a)(2).

[39] TEX. PENAL CODE § 19.02(b)(1).

[40] TEX. PENAL CODE § 7.01(a).

[41] TEX. PENAL CODE § 7.02(a)(2).

this law and correctly ascertained the substantive elements of the offense as set out in the hypothetically correct jury charge. The court of appeals then properly measured the evidence, viewed in the light most favorable to the verdict, against these substantive elements—as is required by *Jackson.*

Based upon the evidence from appellant's statement that Huicho Mares told appellant that they had to bring the victim with them because she recognized Mares, and that Rick Velasquez told appellant to inject the victim with heroin so that she would die, the court of appeals reasonably concluded that appellant was aware of the aggravated kidnapping and intention to kill the victim. Also from his statement, the court of appeals reasonably concluded that appellant, being aware of the ongoing kidnapping and intent to murder, assisted in that kidnapping and capital murder by driving the victim to a rural location where her body was thrown from the vehicle. In finding that appellant's statements were corroborated by independent evidence both as to the murder and kidnapping of the victim, including the fact that the victim was scared before she left Saenz's home, that one of the gunmen pointed his gun at her, that she left personal items at Saenz's home, the discovery of the victim's body, and the manner in which she died, the court of appeals correctly found that

> a rational jury could have determined from the evidence as we have outlined it that, acting with the intent to promote or assist Luis Carlos Mares in the offense of Capital Murder, when Mares intentionally committed the murder in the course of committing the offense of aggravated kidnapping, Adames solicited, encouraged, directed, aided, or attempted to aid Mares to commit the two offenses of aggravated kidnapping and murder.[42]

---

[42] *Adames*, at *18.

**Conclusion**

We hold that the court of appeals did not fail to distinguish between sufficiency reviews under *Malik* and *Jackson*. The court of appeals correctly applied the *Jackson* evidentiary-sufficiency standard to the hypothetically correct jury charge and held that the evidence was legally sufficient to support appellant's conviction, thereby reviewing appellant's claims 2-4.

We affirm the judgment of the court of appeals and remand the cause to the trial court for further proceedings.

Delivered: October 5, 2011
Publish