*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



## MEMORANDUM OPINION

No. 04-11-00477-CR

Amador L. **RODRIGUEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2008CR10714
Honorable Melisa Skinner, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Sandee Bryan Marion, Justice
                Phylis J. Speedlin, Justice

Delivered and Filed:  July 11, 2012

AFFIRMED

Amador L. Rodriguez was convicted of theft and sentenced to eight months in state jail and a fine of $2100. He appeals arguing that the evidence is insufficient to support his conviction. We affirm.

### BACKGROUND

Richard O'Bryant, the complainant, testified at trial that in 2007, he purchased an older home in the historical district of King William in San Antonio, Texas. He had hired a contractor

to perform renovations on the home. After O'Bryant moved in to the newly renovated home, he decided to start what he called "the garage project." O'Bryant testified that "the idea was to build a nice two-car garage a little oversized, oversized doors, make it really nice, and to have a second story above that I could use for storage or set up as an efficiency apartment." O'Bryant hired his "regular contractor," David Lopez, to construct the garage. Lopez poured the slab, the size of which had already been approved by the City. However, O'Bryant testified that when he decided to build a two-story garage, instead of a one-story, he was told by the City that before he could obtain a permit to build a two-story garage, he needed "to get an engineer to inspect the slab and certify that it will hold a two-story structure." O'Bryant testified that his contractor referred him to Appellant Amador Rodriguez. O'Bryant told Rodriguez that he needed a letter from a professional engineer certifying the slab. According to O'Bryant, Rodriguez replied, "I can give you an engineered letter. I'm an engineer. I can give you the letter. Let me go look at the slab. I [have] to look at it first." Rodriguez inspected the slab and provided a letter, certifying that he had inspected the foundation and that in his opinion the existing foundation was "more than adequate to carry the loads of a two-story construction using the conventional wood stud frame construction." The letter was signed by Amador Rodriguez and had a seal reflecting Rodriguez's name and Professional Registered Engineer No. 49380. O'Bryant paid Rodriguez $250.

When O'Bryant gave the letter to city officials, he was told that he also had to provide "engineered plans." O'Bryant was told that he could not use drawings for a two-story structure, but that he needed plans created by a licensed engineer. O'Bryant testified that "the next step was getting the drawings and when . . . the engineer drawings are approved by the City," then he could "take the approved plans over to the permit desk and get a permit so that my contractor" could begin working on the garage. So, O'Bryant called Rodriguez and said that he needed plans

created by an engineer for the two-story garage. O'Bryant gave Rodriguez drawings that an architect had made of the proposed garage and asked Rodriguez if he could take the drawings and make them "into engineered plans." Rodriguez agreed. O'Bryant paid Rodriguez $700 up front and agreed to pay Rodriguez another $1150 upon completion. Rodriguez gave O'Bryant the completed plans, which reflected Rodriguez's seal certifying he was a licensed professional engineer. O'Bryant then took the plans to the City's engineering board. O'Bryant was later informed by the board that the plans would not be approved because the number on the engineer's seal was not assigned to Rodriguez. Thus, O'Bryant was told he had not submitted valid plans prepared by a licensed professional engineer. O'Bryant then called the Texas Board of Professional Engineers and was told that the number on his plans had been assigned to an engineer who is deceased. O'Bryant testified that he would not have hired Rodriguez if Rodriguez had not represented that he was a licensed professional engineer.

O'Bryant testified that he then sent a certified letter to Rodriguez, demanding that Rodriguez return the $2100 O'Bryant had paid. When Rodriguez did not respond, O'Bryant filed a complaint with police.

David Howell of the Texas Board of Professional Engineers testified that upon passing exams administered by the Board, a person is issued a license and becomes a licensed professional engineer.[1] Each license has a number that is unique to one person, and once a license is issued, the Board requires the licensee to have a seal made with the licensee's assigned number. According to Howell, the seal has the person's name and assigned number on it. Licensed engineers are required to place the seal on their drawings. Howell testified that License No. 49380 is registered to Julian Ybarra, who passed away in 1998. Ybarra's license expired on

---

[1] Howell testified that the current term is "licensed professional engineer." The former term had been "licensed registered engineer." The seal on the letter Rodriguez wrote to the City reflected that Rodriguez was a "licensed registered engineer."

March 31, 1999. Howell also testified that License No. 49380 would never be reissued to another person and has not been reissued to another person. Howell was then asked to look at State's Exhibit No. 2, which depicted the seal with Rodriguez's name. Howell confirmed that the number on Rodriguez's seal, No. 49380, is the number assigned to the deceased Julian Ybarra. Howell also testified that the Board had never issued a license to Rodriguez.

Among the exhibits admitted into evidence were the following State exhibits: the letter Rodriguez wrote to the City Building Inspector regarding the foundation; the demand letter O'Bryant sent Rodriguez; a copy of a computer printout showing that Professional Engineer License No. 49380 was assigned to Julian Ybarra, who is deceased; a copy of Ybarra's application for his engineer license; and a copy of Ybarra's obituary. The defense called one witness, Michael Fortney, a private investigator. Fortney testified that he was easily able to create a seal with Rodriguez's name by copying and pasting from the internet.

### DISCUSSION

Rodriguez argues that the evidence is insufficient to support his conviction for theft. In a federal due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 1763 (2012). The court of criminal appeals has explained that this standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence." *Adames*, 353 S.W.3d at 860. Therefore, on appellate review, we determine whether based on "cumulative force of all the evidence" the necessary inferences made by the trier of fact are reasonable. *Id.* We conduct this constitutional review by

measuring the evidentiary sufficiency with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.*

A person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a) (West 2011). Appropriation is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1). Consent is not effective if it is "induced by deception or coercion." *Id.* § 31.01(3)(A). In this case, the jury was charged that "deception" means "creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true." *Id.* § 31.01(1)(A).

In his brief, Rodriguez argues that O'Bryant hired Rodriguez "to help him lie to the City of San Antonio." According to Rodriguez, a building permit must be obtained *before* a slab is poured. He argues that because O'Bryant's contractor had already poured the slab for the garage, O'Bryant hired him to deceive the City, by certifying that he had inspected the foundation before the concrete was poured. Rodriguez contends there is no evidence that he created or confirmed by words or conduct a false impression that led O'Bryant to act. According to Rodriguez, "[w]hile [Rodriguez] may have lied to the City, the State failed to prove that [Rodriguez] lied to O'Bryant." Rodriguez also argues that "[a]lthough the State may have introduced evidence that [Rodriguez] and [O'Bryant] acted to deceive the City of San Antonio, there was no evidence established that [Rodriguez], from the outset, intended to deceive [O'Bryant] in a ruse to accomplish theft of [O'Bryant]'s money." Further, Rodriguez argues that even if he either through his words or actions, caused O'Bryant to hire him to draft a letter and draw plans for O'Bryant's garage apartment, Rodriguez's actions could not have constituted deception under the Penal Code definition, "because the agreement between the two men was a nullity from the

start." According to Rodriguez, any contract between him and O'Bryant was illegal and thus void because a "contract to do a thing which cannot be performed without violation of the law violates public policy and is void."

The State responds that Rodriguez's entire argument is premised on two factual assertions not supported by the record: (1) a building permit must be obtained before a slab is poured; and (2) O'Bryant hired Rodriguez to deceive the City. We agree the record does not support these assertions. In support of his argument that O'Bryant and Rodriguez entered into a contract to perform an illegal act, Rodriguez points to the letter that Rodriguez wrote certifying the slab. In that letter, Rodriguez wrote the following:

> Prior to the placement of concrete, approximately two (2) months ago A.L.R. and Associates performed an inspection at the above named residence proposed single-story garage of the foundation forms, beam reinforcing and main slab reinforcing and found that the overall construction of the foundation was built according to today's construction industry.

Rodriguez claims that the false statement in his letter that he had inspected the foundation prior to the placement of the concrete affirmatively establishes that O'Bryant and Rodriguez agreed to perform an illegal act. We disagree. There is no evidence in the record regarding the propriety of obtaining a building permit after the pouring of a concrete foundation. That is, there is no evidence that O'Bryant, by hiring Rodriguez to inspect the foundation after the slab had been poured, was hiring Rodriguez to perform an illegal act and deceive the City. Further, when asked about this statement in Rodriguez's letter, O'Bryant testified that he was "not aware of that."

There is, however, evidence that Rodriguez represented himself to O'Bryant to be a licensed professional engineer, that Rodriguez represented that he could perform the work required, that O'Bryant believed Rodriguez was a licensed engineer, and that O'Bryant would never had hired Rodriguez if he had known Rodriguez was not a licensed professional engineer

because only drawings prepared by a licensed engineer would be accepted by the City. There is also evidence that Rodriguez provided O'Bryant with a letter and drawings containing a seal bearing Rodriguez's name, the term "Professional Engineer," and a license number, which was not assigned to Rodriguez but to an engineer who is deceased. Finally, there is evidence that Rodriguez had never been licensed as an engineer by the State of Texas. From this evidence, a rational juror could conclude that Rodriguez knew he was not a licensed professional engineer, that he falsely represented to O'Bryant he was a licensed professional engineer, and that his false representation of fact affected O'Bryant's judgment concerning their transaction. *See* TEX. PENAL CODE ANN. § 31.01(1)(A).

We note that Rodriguez argues that the facts giving rise to this case are not criminal, but should have been settled in civil court. "A claim based upon malfeasance in connection with a contract requires proof of the false pretext or fraud in order to become a viable criminal prosecution." *De La Fuente v. State*, 264 S.W.3d 302, 317 (Tex. App.—San Antonio 2008, pet. ref'd) (quotation omitted). "If no more than intent and appropriation is shown in a contract claim, nothing illegal is apparent, because under the terms of the contracts individuals typically have the right to 'deprive the owner of property,' albeit in return for consideration." *Id.* (quotation omitted). "The mere fact that a person failed to return money after failing to perform a contract does not, by itself, constitute theft." *Id.* "Criminal intent may be inferred from the defendant's conduct and the surrounding circumstances." *Id.* Thus, for this case to amount to theft rather than a mere civil dispute, the State had to prove that Rodriguez "had no intention of fulfilling his obligations" under the contract, and "his promises to perform were merely a ruse to accomplish theft by deception." *Id.* Here, there is evidence that O'Bryant needed an engineer to certify his foundation and prepare plans. There is evidence that O'Bryant hired Rodriguez because

Rodriguez represented himself to be a licensed professional engineer. There is also evidence that Rodriguez's seal reflected a license number that belonged to a deceased person and that Rodriguez has never been licensed as an engineer. Therefore, there is evidence from which a rational juror could conclude that Rodriguez had no intention of fulfilling his obligations under the contract because he knew he was not a licensed professional engineer and thus did not have the professional qualifications to complete the contract. We hold that the evidence is sufficient to support Rodriguez's conviction for theft.

## CONCLUSION

We affirm the judgment of the trial court.

Karen Angelini, Justice

Do not publish