

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00039-CR

Miles Monroe **MCFADDEN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR9548
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Marialyn Barnard, Justice

Delivered and Filed:  February 13, 2013

AFFIRMED

Miles Monroe McFadden was found guilty of continuous sexual abuse of a child as charged in Count I of the indictment; aggravated sexual assault of a child as charged in Counts II, III, IV, and V; sexual assault of a child as charged in Counts VI, VII, VIII, IX; and indecency with a child by contact as charged in Count X. He was sentenced to life imprisonment for Counts I to V, twenty years of imprisonment for Counts VI to IX, and ten years imprisonment for Count X, all to run concurrently. On appeal, he argues that the evidence is insufficient to sustain his conviction.

At trial, the State presented evidence that on July 23, 2010, Sirena Ann Finch, McFadden's neighbor, awoke to knocking on her front door. Finch testified that the complainant, McFadden's adoptive son, was at the door. After she let the complainant into her home, the complainant went to speak with his best friend, Finch's son. Finch's son then asked Finch to come into his room and talk to both boys. Finch testified that the complainant told her that "his dad [McFadden] had kicked him out and that he was being – his dad was touching him and he was being molested." According to Finch, when the complainant said this, "he ran his hands over his genital area." Finch testified that the complainant said he had been talking with McFadden about going back to school and also told McFadden that he "wanted to start dating girls." The complainant said that they had then gotten into a fight and his dad "kicked him out, told him to leave, leave his key, and he didn't care if he committed suicide." Finch then called the police. Later that evening, the complainant called Finch from his aunt's home. According to Finch, the complainant told her that McFadden had threatened "to throw [the complainant's] cousin in jail for stealing TVs if [the complainant] didn't take back what he said."

The complainant, who was seventeen years old at the time of trial, testified that he was adopted by McFadden when he was in the sixth grade. Before living with McFadden, the complainant had been in several different foster homes and in shelters, so he was excited about living with McFadden. The complainant testified that since the time he lived in a shelter, he has always had trouble sleeping and was prescribed medication to help him sleep. According to the complainant, McFadden began molesting him right after he moved in with McFadden. McFadden would give him his sleeping medication and would wait for him to fall asleep. The complainant would wake up to his pants being pulled down and McFadden on top of him. The complainant testified that McFadden put his penis in the complainant's anus. According to the complainant, McFadden would do this twice a week. The complainant testified that after these

incidents, he would have difficulty with bowel movements and would notice the discharge of the complainant's sperm. The complainant testified that when he was in the seventh grade, he began to change physically. It was during this time that in addition to anal penetration, McFadden began touching the complainant's penis. The complainant testified that McFadden rubbed the complainant's penis so hard that McFadden left scars on his penis. According to the complainant, the abuse occurred over a period of four and a half years. He never told anyone because he was nervous and thought people would think he was homosexual. The complainant also testified that he was afraid of McFadden and thought McFadden would hurt him if he told anyone. It was not until he got into a fight with McFadden and was kicked out of the house that he finally told his friend about the abuse and then told Finch, his friend's mother.

On cross-examination, the complainant agreed that when McFadden worked at the detention center, he worked at night at least five times a week. According to the complainant, there were times when McFadden would abuse him during the daytime. The complainant was not in school and was home in the daytime with McFadden. The complainant also testified that during a 2007 investigation by Child Protective Services regarding his cousin, he was asked whether he was being sexually abused and he said that he was not. According to the complainant, when he told his aunt that McFadden had molested him, she did not believe him and blamed the sleeping pills he took. The complainant also testified on cross-examination that while he had stated the abuse occurred about twice a week, McFadden did not abuse him for the two months the complainant lived at his grandmother's home, the three months McFadden was away for Air Force training, or the three months McFadden was in Mississippi for training related to his job in the Air Force.

Dr. Edward Russell, a sexual assault nurse examiner, examined the complainant on July 24, 2010. According to Dr. Russell, the complainant said that he had been molested by his father,

but did not remember when the last occurrence of abuse had occurred. Dr. Russell testified that the complainant said his father had sodomized him. The complainant also said that on one occasion, when his father had caught him masturbating, his father grabbed his penis and started rubbing his penis so hard that he took skin off the penis. The complainant said that this incident had left him with a "scar" on his penis. Dr. Russell testified that a physical exam showed "an area on top of [the complainant's] penis that was missing some pigment." According to Dr. Russell, this missing dark pigment on the complainant's penis is consistent with a scar. Further, based on the complainant's medical history, Dr. Russell tested him for sexually transmitted diseases through urine and swab cultures. The complainant tested positive for chlamydia. According to Dr. Russell, chlamydia "stays confined" and "does not spread in your blood like viruses do." Dr. Russell testified that in this case, the complainant "was positive for chlamydia in his rectum." However, the complainant's urine test was negative for chlamydia, which indicates that the complainant did not have chlamydia in his penis. Dr. Russell testified that having chlamydia of the rectum cannot be transmitted through heterosexual vaginal intercourse. Dr. Russell also testified that other than the positive test for chlamydia, there were no injuries to the anus. However, according to Dr. Russell, "only about five percent of sexual assault cases with penetration, including multiple penetration by multiple people, . . . will you see an injury." Thus, Dr. Russell testified that the lack of an injury does not mean that there was not penetration.

The defense presented three witnesses: Tina Jones, McFadden's sister and the complainant's aunt; David O'Neal, McFadden's cousin; and McFadden. Tina Jones testified that the complainant came to her house after he had spoken with the police. She testified that the complainant asked her whether he would get in trouble if he said that "this [had] never happened." Jones testified that she inferred from the complainant's statement that "he had made it up." David O'Neal testified that he and McFadden are like brothers, and he had known the

complainant since the time of his adoption by McFadden. O'Neal testified that five or six months before trial, he picked up the complainant from school and took him to McFadden's defense counsel's law office. According to O'Neal, when asked by defense counsel, the complainant said that "nothing happened" and that he made up the allegations because "he just wanted to get away." According to O'Neal, the complainant said that he did not want to live under McFadden's strict rules.

McFadden testified in his own defense. McFadden denied having sexually abused the complainant. He admitted that both he and the complainant had the same sexually transmitted disease. He gave the following explanation for the cause:

> I came home and I was drunk one night and I woke up and [the complainant] was on top of me. And I pushed him off of me, and I asked him what he was doing, and he told me that he thought that's what I wanted. But I told him, how, when I'm asleep and drunk? How would I – how would I know if I wasn't moving around that he was on top of me? And I talked to him and I didn't know what to do.

During this incident, McFadden testified that neither he nor the complainant had any pants on. According to McFadden, he could not think of any reason why the complainant would think he wanted him to do such an act. McFadden testified that this incident was the only time anything like that happened.

On appeal, McFadden argues that the evidence is insufficient to support his convictions. In a federal due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 1763 (2012). The court of criminal appeals has explained that this standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing

reasonable inferences from the evidence." *Adames*, 353 S.W.3d at 860. Therefore, on appellate review, we determine whether based on "cumulative force of all the evidence" the necessary inferences made by the trier of fact are reasonable. *Id.* We conduct this constitutional review by measuring the evidentiary sufficiency with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.*

McFadden was found guilty of continuous sexual abuse of a child; four counts of aggravated sexual assault of a child; four counts of sexual assault of a child; and one count of indecency with a child by contact. In his brief, McFadden does not specifically address the sufficiency of the evidence relating to each of these offenses, but instead generally argues that his "conviction" should be reversed and rendered for the following reasons: (1) no motive was shown; (2) there was no medical trauma to the complainant's anus; (3) in 2007, the complainant denied to Child Protective Services that he had suffered any sexual abuse; (4) in 2010, the complainant recanted his allegation of sexual abuse to McFadden's sister; (5) in 2011, the complainant recanted his allegation of sexual abuse to McFadden's cousin; (6) on direct examination, the complainant testified that the sexual abuse always occurred at night, but on cross-examination admitted that McFadden always worked at night; (7) no DNA from spermatozoa attributable to McFadden was found; (8) McFadden's work history demonstrated his "excellent reputation for being peaceful and law abiding"; and (9) the complainant made the false allegations of sexual abuse against McFadden because McFadden denied him permission to date girls.

With regard to no motive being shown, motive is not an element of continuous sexual abuse of a child; aggravated sexual assault of a child; sexual assault of a child; or indecency with a child by contact. *See* TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2012) (elements of continuous sexual abuse of a child); *id.* § 22.021(a)(1)(B)(i), (2)(B) (elements of aggravated

sexual assault of a child); *id.* § 22.011(a)(2)(A) (West 2011) (elements of sexual assault of a child); *id.* 21.11(a)(1) (elements of indecency with a child by contact). And, we measure the evidentiary sufficiency with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Adames*, 353 S.W.3d at 860.

With regard to there being no medical trauma to the complainant's anus, Dr. Russell testified that "only about five percent of sexual assault cases with penetration, including multiple penetration by multiple people, . . . will you see an injury" and that the lack of an injury does not mean that there was not penetration. With regard to the remaining reasons listed by McFadden, we must defer to the factfinder's evaluation of the credibility of the evidence and the weight to give such evidence. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The jury heard disputed evidence in this case. The complainant testified about four years of sexual abuse committed by McFadden. McFadden denied any abuse. McFadden's sister and cousin testified that the complainant recanted his allegations. It was the jury's role to determine the credibility of these witnesses. *See Adames*, 353 S.W.3d at 860. And, in viewing all the evidence in the light most favorable to the verdict, there is sufficient evidence from which a rational trier of fact could have found the essential elements of the offenses beyond a reasonable doubt. *See Adames*, 353 S.W.3d at 860; *see also* TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2012) (continuous sexual abuse of a child); *id.* § 22.021(a)(1)(B)(i), (2)(B) (West 2011) (aggravated sexual assault of a child); *id.* § 22.011(a)(2)(A) (sexual assault of a child); *id.* 21.11(a)(1) (indecency with a child by contact). The complainant testified in detail about the sexual abuse in this case. In addition to the complainant's testimony, the complainant's neighbor testified that the complainant had made an outcry of child abuse to her, telling her that McFadden had sexually abused him. There was also evidence that both the complainant and McFadden had chlamydia and that the complainant's chlamydia was found in his rectum. Dr. Russell also

testified that a discoloration of the complainant's penis is consistent with his allegations of abuse by McFadden. We therefore hold that the evidence is legally sufficient and affirm the judgment of the trial court.

Karen Angelini, Justice

Do not publish