**Affirm and Opinion Filed April 2, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-00042-CR

**JASON ALEXANDER WILSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 382nd Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 2-12-358**

## MEMORANDUM OPINION

Before Justices Moseley, Bridges, and Evans
Opinion by Justice Bridges

Jason Alexander Wilson appeals his kidnapping conviction. A jury convicted appellant, and the trial judge sentenced him to five years' confinement, probated for five years. In a single issue, appellant argues the evidence is insufficient to support his conviction. We affirm the trial court's judgment.

Appellant and his wife, E.W., married in August 2007 and moved to Missouri where they lived with appellant's mother for a time and then moved into an apartment of their own. In August 2010, they moved back to Texas. Appellant worked a series of jobs and was "always threatening that [he and E.W.] should go back to Missouri." Appellant threatened he would take their two children, and E.W. "[would not] see them again." In June 2012, they were living in an apartment in Garland when they received an electric bill they were worried they would not be

able to pay. E.W. could not call about the bill because it was Sunday and the office was closed. Appellant decided "it would be best just to move back to Missouri." E.W. tried "to talk him out of it, but appellant told her "he would take the boys and go without" her if she did not want to go. E.W. posted "an unhappy face" as her status on Facebook. "Someone asked what was wrong, and [E.W.] said that we were going to Missouri on Thursday because [she] had talked [appellant] out of leaving the next day."

The next day, June 4, E.W. called her mother and asked her to come pick up E.W. and the children before appellant came home. E.W.'s mother came and took E.W. and the children to the home of a relative of E.W.'s mother's partner. By that time, E.W. "had already made up [her] mind that [she] was not going to Missouri." E.W. turned her phone on and found "at least ten" voicemail messages from appellant. The first nine messages were "very angry, a lot of cursing, yelling, threatening, 'I'll find you. I'll take the boys. We'll make sure that you don't see the boys.'" In the last message, appellant was "very apologetic" and said "he would do anything if [they] stayed in Texas." E.W. called appellant and told her where she was. E.W. told appellant she "wanted to get into some sort of counseling," and appellant "seemed to agree with that."

When appellant arrived, he "seemed very angry" and "wouldn't really talk to anyone." Appellant loaded the belongings E.W. had brought, and E.W. got in the vehicle. E.W. believed they were returning to the apartment in Garland, and they "were going to work things out." E.W.'s mother came out to the vehicle and told E.W. to text when she made it home. E.W. had only been in the vehicle for a few minutes when appellant asked to check her cell phone. This was "something that he did from time to time," and E.W. gave appellant her phone. Appellant "looked at it for a minute, and then he stuck it down into the side pocket of his driver door." E.W. "felt kind of panicky" and asked for her phone. Appellant refused to give it to her and said,

"Did you really think that I would go home and let you have your way?" E.W. "started crying" and "felt very sick." Appellant "started heading to Missouri," and E.W. saw appellant "had the GPS on his cell phone already set to his mom's address." E.W. was "crying hysterically and begging [appellant] to let her use the phone.

Appellant stopped at a Walmart to pick up a money order his mother had sent "for gas money to get to Missouri." Appellant was unwilling to let E.W. stay in the car with the boys, and he told E.W. she "would try to take off with them again or call 911." Appellant and E.W. went into Walmart together, and appellant got in line at customer service to get the money order paperwork filled out. The boys were "in the cart," and they were "fussy." E.W. was crying and "pacing back and forth with them in the cart, trying to keep them calm." E.W. was "scared to talk to anyone" and "wasn't sure what [appellant] would do if he saw [her] talking to someone." The stop at Walmart lasted "probably ten minutes," and E.W. left with appellant. E.W. asked "to be let out of the vehicle because [she] was so scared." E.W. told appellant to give her back her phone so she could call someone to come get her, but appellant refused and told E.W. "no, that we were going to Missouri."

Near the Texas/Oklahoma border, appellant let E.W. use his phone to call her mother. E.W. was "trying to be lighthearted," and she told her mother, "Mom, he tricked me. Well, he won't let me have my phone, and we're headed to Missouri right now." E.W.'s mother started crying and "sounded scared and upset." When E.W.'s mother calmed down, she asked a series of yes or no questions "to determine whether or not she should contact the police." E.W.'s mother asked if E.W. felt she was free to go, and E.W. said "No." E.W. said "Yes" when her mother asked if she should call police.

Appellant circled one McDonald's and then went through the drive-through at another McDonald's. E.W. called her mother again and told her "We're in Oklahoma now." E.W. was

"trying to be lighthearted," but she knew her mother had contacted police. E.W. called her mother several times, and during one call she spoke with a Garland police officer, who asked if E.W. feared for her safety and the safety of her children. E.W. said "Yes."

Appellant stopped at a gas station in Oklahoma where he retrieved E.W.'s cell phone from where he had hidden it under the back seat after taking it apart. Appellant put the phone back together and gave it to E.W., telling her not to call 911 before he took the car keys and went inside the gas station. E.W. got out, changed the boys' diapers on the front seat, and put them back in the vehicle. E.W. went around to the back of the vehicle, called her mother, and "started reading off the license plate number to her" as soon as she answered so she could give the number to police. E.W. told her mother she had to go and hung up. Appellant came back out and told E.W. she could go inside to the restroom. E.W. went inside and asked the cashier what city they were in because she did not have her glasses and "couldn't see the signs to know." The clerk said they were in Checotah, Oklahoma, and E.W. called her mother and relayed her location. E.W. went back out to the vehicle, and they continued driving. Approximately fifteen minutes later, police pulled the vehicle over and arrested appellant.

Appellant was charged with kidnapping. At trial, E.W. described how appellant had said he was taking her to their home in Garland but changed the plan and took her where she did not want to go. E.W. testified she did not feel free to leave the vehicle "at any point." She testified she was not "capable of running off" in her condition without glasses and with her children in the car. At the conclusion of trial, a jury convicted appellant, and this appeal followed.

In his sole issue, appellant argues the evidence was insufficient to show he committed the offense of kidnapping. Specifically, appellant challenges the sufficiency of the evidence to show he (1) restricted his wife's movement without consent, i.e. by force, intimidation, or deception and (2) interfered substantially with her liberty.

–4–

The only relevant standard when reviewing the sufficiency of the evidence is the standard set out in *Jackson v. Virginia,* 443 U.S. 307 (1979). *See Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). In determining the sufficiency of the evidence, an appellate court is to consider all evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. We defer to the factfinder's determinations of the witnesses' credibility and the weight to be given their testimony, because the factfinder is the sole judge of those matters. *Id.* at 326.

A person commits the offense of kidnapping if he intentionally or knowingly abducts another person. TEX. PENAL CODE ANN. § 20.03(a) (West 2011). "Abduct" means to restrain a person with intent to prevent his liberation by secreting or holding him in a place where he is not likely to be found or using or threatening to use deadly force. *Id.* § 20.01(2). "Restrain" means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person. *Id.* § 20.01(1). Restraint is "without consent" if it is accomplished by force, intimidation, or deception. *Id.* § 20.01(1)(A).

Appellant argues "the evidence disproves the lack of consent" because E.W. testified she "didn't have a choice" but to go to Missouri "because she wasn't willing for the boys to go without her." Further, appellant points to E.W.'s Facebook posting that "she was going to Missouri" and her packing as evidence she consented to go to Missouri. Appellant argues E.W. "had a full opportunity to resolve any dilemma she thought she had" when she accompanied appellant into the Walmart, but she "made no effort of any kind to report her situation." Appellant argues E.W. "made clear that it was her choice to remain with the boys both before and after she understood Missouri was their destination." Appellant characterizes the situation as

one where he did not care if E.W. remained with him and the boys, and E.W. "was the one insistent on being where she was," not appellant. In effect, appellant appears to argue E.W. willfully remained in the car with appellant "for one purpose, her boys," but told her mother and police she "did not want to be where she was for the purpose of accusing her husband of felony kidnapping."

As appellant concedes, an automobile being driven on city streets can come within the meaning of the statutory phrase in the abduction definition of "secreting or holding her in a place she is not likely to be found." *Sanders v. State*, 605 S.W.2d 612, 614 (Tex. Crim. App. 1980). The record shows appellant picked up E.W. and took her phone away within minutes. E.W. believed they were returning to the apartment in Garland when appellant started heading for Missouri. E.W. started crying and felt sick. E.W. told appellant to give her back her phone so she could call someone to come get her, but appellant refused and told E.W. "no, that we were going to Missouri." Thus, the record shows appellant intended to take E.W. to Missouri against her will. When appellant stopped at Walmart, E.W. was scared to talk to anyone. When appellant had traveled almost to Oklahoma, he permitted E.W. to call her mother, and E.W. was able to convey by the use of yes or no questions that she was not free to go and her mother should call police. We conclude this evidence was sufficient to show appellant (1) restricted his wife's movement without consent, i.e. by force, intimidation, or deception and (2) interfered substantially with her liberty. *See* TEX. PENAL CODE ANN. §§ 20.01(1), 20.01(1)(A), 20.03(a) (West 2011); *Jackson*, 443 U.S. at 319. We overrule appellant's sole issue.

We affirm the trial court's judgment.

Do Not Publish
TEX. R. APP. P. 47

130042F.U05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

JASON ALEXANDER WILSON, Appellant

No. 05-13-00042-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 382nd Judicial District Court, Rockwall County, Texas
Trial Court Cause No. 2-12-358.
Opinion delivered by Justice Bridges.
Justices Moseley and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered April 2, 2014.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE