

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00303-CR

JOSE L. JIMENEZ                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

## FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 1327144D

----------

## DISSENTING OPINION

----------

The majority opinion adequately presents the facts as set forth by the witnesses. Looking at the facts presented at trial, however, I cannot join in that opinion. The majority overrules Appellant's challenges to the sufficiency of the evidence to support his conviction for indecency with a child by contact. *See* Tex. Penal Code Ann. § 21.11(a)(1) (West 2011). I do not see any evidence supporting a finding beyond a reasonable doubt that Appellant intended to

arouse anyone's sexual desire if and when contact occurred; I therefore disagree.

The consensus of evidentiary opinion seems to show that Appellant came home intoxicated and ended up sleeping with his five-year-old son Timmy, which was not unusual. Appellant apparently was fully clothed because that is how he was dressed when he came home and how he was dressed when he was awakened the next day.

According to Timmy's mother (Mother), when Timmy awakened, he told her that during the night Appellant had touched him "like this" or "like that," and she apparently indicated with her hands while she was testifying that he had used his hands to show that the touch had been in his genital region.

Timmy testified that he had been touched "in [his] wee-wee," which he "use[d] to pee." He also testified that Appellant never played with his wee-wee and that he did not know why he had originally told Mother that Appellant had played with his wee-wee. Timmy testified that when he told Mother that Appellant had touched him, he had been lying and that he lied because he did not know what was touching him. Whatever touched him "felt, like, very cold." He also testified that he did not know if Appellant had touched him and that maybe it was someone else.

Appellant testified that on the night in question, he and Timmy "played, wrestled, hugged, whatever, and that's pretty much all [he] remember[ed]. There was no physical touching, like, on purpose. If anything happened, . . . it was all

2

accidental." He recalled laughing with his son as they wrestled and tickled on the evening in question. He did not remember touching Timmy in his private area "by accident or on purpose." Appellant testified that when Mother woke Timmy up the next morning and asked him why he was naked, Timmy answered, "My dad took my clothes off" and "he did mention that [Appellant] touched him on his wee-wee." Appellant testified that he was then "like, what?"

Appellant explained that he told Mother that if Timmy said that Appellant touched him, maybe Appellant mistook Timmy for Mother and was hugging him thinking that he was Mother. Appellant testified that the family had a dog and a cat and that his hands were not cold. He testified that if Timmy "felt something cold" rub against him, it was not Appellant. Appellant testified that he was "100 percent sure" that he had not touched Timmy's penis and that if he had touched it, the contact would have been accidental while they were playing. Appellant conceded in his testimony that it was possible that he had touched Timmy: "Like I said, we were playing. If I had rubbed against him, it was nothing malicious. You guys are trying to make it like I'm a sex offender." Appellant also testified that he had told the police in his interview that he "might have put [his] hand there not knowing it was him [(Timmy)]." Appellant further admitted saying in his interview that if Timmy had said that he "touched his private parts," then Appellant had "touched his private parts."

The medical personnel, police, Child Protective Services investigator, and forensic investigator provided little evidence of value other than that at the time of

3

trial, Timmy and his mother had changed their version of events. They had given a more inculpatory version immediately following the report of the incident.

I differ from the majority in that I see no evidence of any past conduct or behavior on the part of Appellant and no evidence adduced at trial that supports a finding that if and when the "touch" took place, Appellant had the requisite "intent to arouse or gratify the sexual desire of any person," as provided in section 21.11(a)(1)(2) of the Texas Penal Code. Tex. Penal Code Ann. § 21.11(a); *see Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Adames v. State,* 353 S.W.3d 854, 859 (Tex. Crim. App. 2011), *cert. denied,* 132 S. Ct. 1763 (2012). Therefore, I dissent.

/s/ Charles Bleil
CHARLES BLEIL
JUSTICE

PUBLISH

DELIVERED: December 22, 2016

4