**AFFIRM; Opinion Filed June 20, 2013.**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

### No. 05-12-00176-CR

_____

**JOSE RUBEN ALVARENGA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-82015-2011**

## MEMORANDUM OPINION

Before Justices Moseley, Bridges, and Lang-Miers
Opinion by Justice Moseley

A jury convicted Jose Ruben Alvarenga of aggravated robbery. In a single issue, Alvarenga argues the evidence is legally insufficient to support his conviction; specifically, he asserts the State did not prove he was present at the time of the robbery. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm the trial court's judgment.

The State charged Alvarenga with intentionally or knowingly threatening a person or placing her in fear of imminent bodily injury or death while in the course of committing theft of property; the State also alleged that Alvarenga used or exhibited a firearm during the offense. *See* TEX. PENAL CODE ANN. §§ 29.02(a)(2)(West 2011) (definition of robbery), 29.03(a)(3) (definition of aggravated robbery).

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011), *cert. denied*, 132 S.Ct. 1763 (2012). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Adames*, 353 S.W.3d at 860. This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U .S. at 319.

The State's evidence implicating Alvarenga included circumstantial evidence. In a circumstantial evidence case, it is not necessary that every fact point directly to the accused's guilt. *Temple v. State*, 390 S.W.3d 341, 359-60 (Tex. Crim. App. 2013) (circumstantial evidence allowed jury reasonably to infer guilt). The "cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.* When the State relies on circumstantial evidence, identification of the defendant is sufficient when, considered in relation to all the testimony, the conclusion is warranted by the combined and cumulative force of all the circumstances. *See Temple*, 390 S.W.3d at 359-60.

The evidence showed that on the night of November 18, 2007, two Hispanic men robbed a Tres Amigos convenience store in Collin County, Texas. One of the men wore a black shirt or jacket and the other wore a red shirt. The men had their faces covered from their noses down and were carrying guns. One of the guns was fired after the two men walked into the store. The man in the black shirt remained near the door while the other took about $400 from the cash

register and attempted to force the check-out clerk to open the safe. He also took the clerk's gold necklace and cell phone.

After the men left the store and drove away in a yellow Nissan Xterra, the check-out clerk called 911 and locked the door. She opened the door to let her husband inside. Neither the clerk nor her husband recalled seeing anything on the ground in the parking lot where the Xterra was parked during the robbery.

When the detective arrived, he found a spent Winchester .380 shell casing inside the convenience store. He also found a "torn[,] black colored T-shirt laying on the ground [in the parking lot]." The t-shirt was close to where the Xterra had been parked. The detective thought the torn t-shirt was "out of place" in the parking lot because the parking lot otherwise was "fairly clean."

Texas Ranger Sergeant A. P. Davidson learned that one of the robbers may have used the street name "Corrunchas." From an informant he learned that Alvarenga is from a community in El Salvador known as Corrunchas. On December 19, 2007, an informant took Davidson to the Burgundy Apartments in Dallas. There Davidson located a stolen, yellow Nissan Xterra suspected of being used in the robbery. The Dallas Police Department recovered and processed the Xterra, which contained the convenience store clerk's cell phone and several documents.

Davidson could not link Alvarenga to anyone living at the Burgundy Apartment complex. However, he testified that in his experience, it is common for people who drive stolen cars to keep the cars somewhere other than where they live in order to separate themselves from the stolen vehicles and avoid detection by law enforcement.

Davidson also learned that Alvarenga's daily-use vehicle was a white Toyota pickup truck. On December 27, 2007, Davidson located Alvarenga's pick-up truck at the Montfort Crossing

apartments, approximately three or four miles from the Burgundy Apartment complex. While looking in the windows of the white truck, Davidson saw a red shirt. Davidson then located Alvarenga in the apartment complex and requested permission to search the truck; Alvarenga refused.

Davidson detained Alvarenga for being in the country illegally and had the truck impounded and transported to the City of Dallas's auto pound. Alvarenga gave the keys to the truck to Davidson. Davidson then obtained and executed a search warrant for the truck. Inside the truck, Davidson found over 200 rounds of ammunition, including some Winchester .380 rounds, a 9 mm semi-automatic handgun, a .38 caliber revolver, "a black ski mask with eye holes cut in it,"[1] a pair of gloves, a cell phone, documents with Alvarenga's name on them, and Alvarenga's cell phone bill from T-Mobile.

Davidson requested call detail records and cell tower data for the phone number shown on the T-Mobile bill to identify where the telephone was located at the time of the Tres Amigos robbery. Davidson identified the cell tower that served the Tres Amigos store and then determined that Alvarenga's cell phone accessed the cell tower near the Tres Amigos store approximately three to four minutes before the robbery. Davidson also explained that, on the night of the robbery, Alvarenga's cell phone accessed the towers located on the driving route from the Burgundy Apartments, where the stolen Nissan Xterra was found, to the Tres Amigos store and back to the Burgundy Apartments. After examining the cell phone records, Davidson was not able to find any other time when Alvarenga's phone accessed the tower closest to the Tres Amigos store.

---

[1] Davidson described the ski mask as "a typical night watchman's cap [made of] knit fabric. Also sometimes referred to as a beanie. However someone had apparently taken a pair of scissors or knife and cut two jagged holes so that maybe the beanie could be worn in a normal fashion and then pulled down over the face with the two jagged eye holes cut in it."

–4–

Davidson's review of Alvarenga's phone records also showed Alvarenga's cell phone accessed the cell tower closest to the Burgundy Apartment complex both before and after the robbery. Davidson testified the phone records were consistent with the phone frequently being around the area of the Burgundy Apartments.

Davidson also obtained a search warrant to collect samples of Alvarenga's saliva and head hair to compare his DNA to that found on the black shirt retrieved from the Tres Amigos crime scene and the black ski mask found in Alvarenga's truck. A forensic DNA analyst who worked for the Texas Department of Public Safety Crime Laboratory testified that the "DNA profile that [she] obtained from the [black] tank top was consistent with the mixture from Mr. Alvarenga and at least one additional contributor." The statistical probability of "selecting an unrelated person at random who could be a contributor to that DNA profile was approximately . . . one in 7.087 billion for the Hispanic population." She also examined the black ski mask, and concluded the "DNA profile that [she] obtained from the swabbing of the stocking cap was also consistent with the mixture from Jose Alvarenga and at least two additional contributors." She "applied statistical probabilities to that and the probability of selecting an unrelated person at random who could have been a contributor to that profile was approximately . . . one in 605,000 for the Hispanic population." The analyst testified it is typical to see clothing with multiple DNA profiles.

Davidson never determined the identity of the second person involved in the robbery.

Viewing the evidence in the light most favorable to the verdict, we conclude the evidence presented to the jury, when viewed together, would allow a rational trier of fact to find beyond a reasonable doubt that Alvarenga was a principal of the aggravated robbery. *See Jackson*, 443

U.S. at 319; *Temple*, 390 S.W.3d at 359-60; *Adames*, 353 S.W.3d at 860. We overrule Alvarenga's sole issue and affirm the trial court's judgment.


/Jim Moseley/
JIM MOSELEY
JUSTICE


Do Not Publish
TEX. R. APP. P. 47
120176F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

JOSE RUBEN ALVARENGA, Appellant

No. 05-12-00176-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District Court, Collin County, Texas
Trial Court Cause No. 380-82015-2011.
Opinion delivered by Justice Moseley.
Justices Bridges and Lang-Miers participating.

      Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 20ᵗʰ day of June, 2013.

/Jim Moseley/
JIM MOSELEY
JUSTICE