**Affirmed; Opinion Filed June 25, 2013.**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

—————————————————————

### No. 05-12-00366-CR

—————————————————————

**DAVID CHANCE LADOUCEUR, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 2**
**Grayson County, Texas**
**Trial Court Cause No. 2010-2-1224**

## MEMORANDUM OPINION

Before Justices Moseley, Francis, and Lang
Opinion By Justice Moseley

A jury convicted David Chance Ladouceur of criminal trespass and assessed punishment at 365 days in jail and a $4000 fine. In four issues, Ladouceur asserts the evidence is legally insufficient to support the conviction, the evidence is legally insufficient to support a Class A misdemeanor conviction, and the trial court erred by denying his motion for a mistrial and by admitting photographs of his tattoos. The background of the case and the evidence adduced at trial are well known to the parties; thus, we do not recite them here in detail. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We

affirm the trial court's judgment.

## BACKGROUND

The record contains evidence that about a month before his arrest, Ladouceur was involved in a disturbance at an apartment complex in Denison. DPS Trooper Kevin Galyon, who worked as a courtesy officer at the apartments, called the Denison police about the incident. The apartment manager, Terry Cooley, was also present and gave Ladouceur notice that he was not a resident and would not be allowed to come back to the property.

About 4:00 a.m. on August 28, 2010, Galyon received a phone call about a disturbance at the apartments. He looked out his window and saw Ladouceur on the property trying to get into his girlfriend's car. Galyon recognized Ladouceur and believed he was in violation of the criminal trespass warning. Galyon, wearing a shirt with "State Trooper" on it and carrying his sidearm, left his apartment to search for Ladouceur. Galyon found Ladouceur upstairs near a stairwell at the apartments. Ladouceur acknowledged that he was not supposed to be on the property. When Ladouceur tried to make a phone call, Galyon looked down and saw a handgun on the ground between Ladouceur's legs. Galyon drew his firearm and told Ladouceur to step away from the handgun. Galyon called police, but Ladouceur managed to run away on foot before they arrived.

## SUFFICIENCY OF THE EVIDENCE

In his first two issues, Ladouceur attacks the sufficiency of the evidence supporting the jury's verdict. We apply the appropriate legal sufficiency standard of review. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 1763 (U.S. 2012). In a legal sufficiency review, "we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Adames*, 353

S.W.3d at 860.  This standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence."  *Id.*  We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge.  *See id.* (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

As applicable here, a person commits criminal trespass if the person enters on property of another without effective consent and the person had notice that entry was forbidden. TEX. PENAL CODE ANN. § 30.05(a)(1) (West Supp. 2012).  Notice means "oral or written communication by the owner or someone with apparent authority to act for the owner."  *Id.* § 30.05(b)(2)(A). "Owner" means a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor.  *Id.* § 1.07(a)(35)(A).

## A. Notice That Entry was Forbidden

In his first issue, Ladouceur argues the evidence is legally insufficient because the State failed to prove he had notice that entry was forbidden.   He claims the State did not prove that he received notice from the owner or someone with apparent authority from the owner.

Galyon testified that Cooley, the apartment manager, had authority to and did give a criminal trespass warning to Ladouceur not to come back on the property.   Galyon also testified that residents of the apartments were given a phone number to call Galyon about complaints or issues on the property.   The owner hired Galyon as a courtesy officer because the owner wanted at least one law enforcement officer living on the property to help the apartment manager make the place safe and to give warnings if necessary.   Galyon had given trespass warnings since the time he was hired at the property with the knowledge of the owner.   Galyon talked to the owner several months after this incident and the owner expressly told Galyon he had the right to do anything necessary to keep the property safe.

We conclude a rational jury could conclude from this and other evidence that either or both of Cooley or Galyon had apparent authority from the owner to give notice that entry on the property was forbidden. *See Williams v. State*, 138 S.W.3d 43, 45 (Tex. App.—Waco 2004, no pet.) (police officer had apparent authority to give trespass warning where apartment manager asked police to do so). It is well settled that an owner or property manager may delegate to security guards or other agents the authority to keep people off the property. *See State v. Jackson*, 849 S.W.2d 444, 446 (Tex. App.— San Antonio 1993, no pet.).

## B. Deadly Weapon

Criminal trespass is normally a Class B misdemeanor. TEX. PENAL CODE ANN. § 30.05(d)(1). However, the offense is a Class A misdemeanor if the defendant "carries a deadly weapon during the commission of the offense." *Id.* § 30.05(d)(3)(B). The information alleging Class B criminal trespass was filed December 7, 2010. In December 2011, the State filed a notice of intent to enhance punishment with the deadly weapon allegation and also filed a motion to amend the information. The trial court granted the motion to amend the information. The information, as amended, included the language, "And the defendant did then and there carry a deadly weapon during the commission of the offense."

At the beginning of the guilt/innocence phase of the trial, the State read the information to the jury and Ladouceur entered a plea of not guilty. The State did not read the allegation that Ladouceur carried a deadly weapon during the commission of the offense.

At trial, Ladouceur did not object to Galyon's testimony about finding the handgun. When the State offered the handgun in evidence, Ladouceur objected that the State had abandoned the deadly weapon allegation by failing to read it to the jury. Ladouceur argued that the deadly weapon allegation increased the offense to a Class A misdemeanor and was not merely an enhancement of punishment. The State argued the allegation was an enhancement of the

punishment and a special issue for the punishment phase.  The trial court overruled the objection. The trial court's charge to the jury at guilt/innocence did not reference the deadly weapon allegation by definition or by separate issue.

Before the punishment hearing, the State read the deadly weapon allegation and Ladouceur pleaded not true subject to his earlier objection.  The jury answered "Yes" to the special issue asking whether they found beyond a reasonable doubt that Ladouceur carried a deadly weapon during the commission of the offense.  The jury also assessed punishment at the maximum for a Class A misdemeanor.  *See* TEX. PENAL CODE ANN. § 12.021.

Ladouceur's second issue on appeal states:

> The evidence is legally insufficient to support a conviction for Criminal Trespass because the Trial Court charged the jury with the Class A Misdemeanor offense of Criminal Trespass in the punishment phase of trial, after the State abandoned the deadly weapon element when it read the information to the jury.

There is evidence that Galyon found Ladouceur on the apartment property at 4:00 a.m., that Ladouceur acknowledged he was not supposed to be at the apartments, and that Galyon saw a handgun on the ground between Ladouceur's legs.  From this and other evidence in the record, a rational jury could conclude beyond a reasonable doubt that Ladouceur carried a deadly weapon during the commission of the offense.  *See Adames*, 353 S.W.3d at 860.  Ladouceur was properly charged with criminal trespass and given notice of the State's intent to enhance punishment to a Class A misdemeanor.  The punishment charge defined deadly weapon and the jury found Ladouceur carried a deadly weapon during the commission of the offense.  We reject the abandonment argument.

Ladouceur also argues there is no evidence the handgun was used in any way.  However, the plain language of the statute requires only that the accused carry a deadly weapon during commission of the offense; it does not require that a deadly weapon be used.  *See* TEX. PENAL

CODE ANN. § 30.05(d)(3)(B).

## C. Conclusion

Considering all the evidence (including that summarized above) in the light most favorable to the verdict, we conclude a rational trier of fact could have found Ladouceur guilty beyond a reasonable doubt of the offense of criminal trespass and that the evidence supported an affirmative finding on the special issue. *See Jackson*, 443 U.S. at 319; *Adames*, 353 S.W.3d at 860.

We overrule Ladouceur's first and second issues.

### MOTION FOR MISTRIAL

Ladouceur's third issue argues the trial court abused its discretion by overruling his motion for a mistrial. The State called Galyon on rebuttal to respond to Ladouceur's contention that his girlfriend dropped the handgun outside her apartment. Galyon testified he did not believe that version of events because "he had evidence before that [Ladouceur] liked to carry a pistol." Ladouceur objected to this statement and the trial court sustained the objection and instructed the jury to disregard it. The trial court denied Ladouceur's motion for a mistrial.

Applying the appropriate factors, the trial court could reasonably have concluded the prejudicial effect of the brief reference to Ladouceur's prior conduct was slight, that the instruction to disregard was sufficient to cure the prejudice, and that absent the misconduct, the outcome would likely have been the same. *See Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). The trial court sustained Ladouceur's objection and instructed the jury to disregard the statement. Such prompt curative action normally cures any prejudice resulting from improper testimony regarding an extraneous offense. *See Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) ("Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer, even one regarding extraneous offenses."). Nothing in this record indicates the jury was unable to follow the instruction and the testimony was not so inflammatory

that the instruction could not cure its prejudicial effect. We conclude the trial court did not abuse

its discretion by denying the motion for mistrial. *See Hawkins v. State*, 135 S.W.3d 72, 76–77

(Tex. Crim. App. 2004).

We overrule Ladouceur's third issue.

### ADMISSION OF PHOTOGRAPHS

In his fourth issue, Ladouceur argues the trial court abused its discretion by admitting

photographs of his tattoos. Galyon identified Ladouceur at trial, but said Ladouceur had changed

his appearance drastically since the incident. Galyon described Ladouceur as having a beard and

dark hair at trial, but at the time of the incident, Ladouceur's head and face were shaved and he was

covered with tattoos on his head, neck, and arms. The State then offered two photographs of how

Ladouceur looked at the time. The photographs show Ladouceur wearing a t-shirt; his head is

bald and his face shaved. The photographs show tattoos covering his scalp, face, and neck.[1]

Ladouceur objected to the photographs under evidence rule 403. TEX. R. EVID. 403. The State

said the photographs were important to explain how Galyon knew Ladouceur by sight. The trial

court overruled the objection. Galyon later testified that after receiving the call about a

disturbance, he looked out his window and recognized Ladouceur by sight.

We review the trial court's ruling admitting or excluding evidence for an abuse of

discretion. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). Relevant evidence may

be excluded if the probative value of the evidence is "substantially outweighed by the danger of

unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue

delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403; *Gigliobianco v. State*,

210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006) (listing factors in balancing analysis required by

---

[1] The tattoos appear to be spider webs, bats, various lines and patterns, a teardrop, dollar sign, and some lettering.

rule 403).  The trial court must balance the probative force of and the proponent's need for the evidence against any tendency the evidence has to suggest an improper basis for decision, to confuse or distract from the main issues, or to be given undue weight by a jury not equipped to evaluate its probative force, and the likelihood of consuming an inordinate amount of time or repeating evidence already admitted.  *Gigliobianco v. State*, 210 S.W.3d at 641–42.

Ladouceur does not contend the photographs had no probative value and the court could have concluded they were relevant to show identity and to explain how Galyon could easily recognize Ladouceur.   Ladouceur's argument on appeal is primarily that the State did not need the photographs to prove identity because Galyon identified Ladouceur as the defendant before the State offered the photographs.   However, need for the evidence is only one of the several factors the trial court must consider in deciding whether to admit evidence.  *See Gigliobianco*, 210 S.W.3d at 641–42.

The trial court could have concluded from this record that the photographs were relevant and the State had a need to explain to the jury how Galyon could so easily recognize Ladouceur in the early morning hours when he looked out his window. The trial court could also have concluded that the tendency of the evidence to suggest an improper basis for decision or to confuse or distract from the main issues was slight.   Presentation of the photographs did not take an inordinate amount of time at the guilt/innocence phase.   Nor  does the record indicate the jury was unequipped to evaluate the probative force of the photographs.   We conclude the trial court did not abuse its discretion by admitting the photographs.

We overrule Ladouceur's fourth issue.

CONCLUSION

We affirm the trial court's judgment.

/Jim Moseley/
JIM MOSELEY
JUSTICE

Do Not Publish
Tex. R. App. P. 47.2(b)
120366F.U05

S

# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAVID CHANCE LADOUCEUR,
Appellant

No. 05-12-00366-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 2, Grayson County, Texas
Trial Court Cause No. 2010-2-1224.
Opinion delivered by Justice Moseley.
Justices Francis and Lang participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 25th day of June, 2013.

/Jim Moseley/
JIM MOSELEY
JUSTICE