**AFFIRM; and Opinion Filed July 15, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00222-CR

**SAMUEL LEE HILL, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F11-70789-Q**

### MEMORANDUM OPINION

Before Justices O'Neill, Francis, and Fillmore
Opinion by Justice Fillmore

A jury convicted Samuel Lee Hill of robbery, found the enhancement paragraph in the indictment true, and assessed punishment of ten years' imprisonment. In one point of error, Hill asserts the evidence is insufficient to support the conviction. The State has not filed a responsive brief. We affirm the trial court's judgment. We issue this memorandum opinion because the law to be applied in this case is well settled. TEX. R. APP. P. 47.4.

### Background

Jessica Medford testified that she met Hill, who she knew as "Tudy," in February 2011. Medford and her children were living with her grandparents and, on two occasions, Hill visited Medford at her grandparents' house. According to Medford, she and Hill sat on the porch or in his car and talked. Medford denied having a sexual relationship with Hill, but believed that Hill

wanted to have a relationship with her. Although Medford admitted that she had used marijuana in the past, she denied using any other drugs and denied taking drugs with Hill.

Medford testified that, on April 6, 2011, Hill called at approximately 2:30 p.m. and asked if he could come see her. Medford had a check for "back child support" in the amount of "1500 and some change." Medford asked Hill if he would take her to a check-cashing store and offered to reimburse Hill for his gas if he took her to the store. Medford admitted the check-cashing store was only about a block from her house and that she did not actually need Hill to drive her to the store.

Medford did not cash the check at the first store she went to because "they were charging too much." Hill suggested that Medford could cash the check for a smaller fee at a store across the street. Medford asked Hill to wait outside the store because she did not want him to know how much money she was receiving. After cashing her check, Medford gave Hill ten dollars and some cigarettes.

Hill agreed to take Medford to pick up her daughter from school. According to Medford, when they passed a park close to the school, Hill backhanded her across her chest. Medford testified it hurt when Hill hit her. Hill reached for Medford's purse while he continued to hit her. Medford testified that Hill punched her in the stomach, chest, head, and jaw. According to Medford, she tried to fight back, and Hill grabbed her neck. As she tried to pull away from Hill, the strap on Medford's purse broke and the contents of her purse fell into the floor on the passenger side of the car.

Medford testified that Hill put the car into reverse and "started driving back and forth." He then tried to push her out of the passenger side window. According to Medford, when she resisted, Hill began choking her. Medford saw people stopping, and she started screaming for help. She told a woman that Hill was trying to take her purse.

–2–

According to Medford, she "somehow ended up on top of" Hill, and Hill tried to push her out of the driver's side window. Medford hooked her arm through the steering wheel in an attempt to stay in the car. Hill succeeding in pushing Medford out of the window, but she did not release the steering wheel. Medford testified that she did not want Hill to leave with her things, but Hill punched her in the stomach three times. Medford "lost her wind" and released the steering wheel. Hill then drove off with Medford's property, including her purse, phone, and watch, over fifteen hundred dollars, and her children's social security cards and birth certificates.

Myisha Turner testified that she was a senior in high school on April 6, 2011. Between 3:00 and 3:30 p.m., Turner and her sister's boyfriend were walking to the grocery store to buy some items for Turner's mother. Turner saw a woman and a man "getting into it" in the middle of the street. The woman's hairpiece had been pulled out and was in the middle of the street. The woman's fingernails were broken and her hands were bleeding. The woman was outside of a car on the driver's side, screaming for somebody to call the police because she was being robbed. The woman was attempting to stop the man from driving away by climbing into the car and grabbing the steering wheel. The man was trying to keep the woman out of the car and punched the woman. The woman "let go," and the man "sped off." Turner believed that she did not see the entire altercation and came in "at the last of it." Turner called the police.

The police and an ambulance came to the scene. The responding officer testified that Medford told him that she had a pain in her chest. Medford testified the ambulance personnel treated her hands with peroxide or saline because her hands had blood on them. Although Medford testified the police took pictures of her injuries, there were no pictures in the police department's file. Further, neither the officer who responded to the call nor the detective who investigated the case recalled taking any pictures. The detective was provided with the temporary license plate number for the car and eventually determined Hill was in possession of

the car. Neither the responding officer nor the detective obtained a copy of the check Medford cashed. Medford's property was not recovered.

After his arrest, Hill sent Medford a letter in which he asked Medford not to testify against him and to sign an affidavit of non-prosecution. Hill told Medford that his sister would give her $700 and he would give her another $800 later. Hill stated in the letter that "you stop got yo drugs[.] I stop got my drug[.] [W]e was high, like all the time. [Y]ou know about P.S.P. [sic]. [T]hat wasn't me, man[.] I will never do that to you." Medford testified Hill lied in the letter about her drug use because he knew she would show the letter to somebody. Medford admitted that she had been convicted of robbery in 2003 and had received probation. After her probation was revoked, she was sentenced to two years' imprisonment.

After the jury convicted Hill of robbery, Hill pleaded true to the enhancement paragraph in the indictment. The jury found the enhancement paragraph to be true and assessed punishment of ten years' imprisonment.

**Analysis**

In one point of error, Hill asserts the evidence is insufficient to support the conviction because there was no evidence "proving or corroborating that Medford had any property in the vehicle" or "connecting the Appellant to any of the alleged stolen property of Medford." Hill argues that Medford's testimony was not credible because (1) her "description of the beating that she claims she suffered is not supported by the facts or evidence presented at the trial"; (2) she is a convicted felon; and (3) there was no evidence from any witness or other source that verified Medford cashed a check, that the described property existed, or that Hill took the property. Hill concludes "the actual evidence presented at trial, other than Medford's testimony, supports that only a misdemeanor assault took place."

–4–

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 668. This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see also Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 1763 (2012). The jury, as the fact finder, is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). We defer to the jury's determinations of credibility, and may not substitute our judgment for that of the fact finder. *Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (in conducting legal sufficiency analysis, appellate court "may not re-weigh the evidence and substitute our judgment for that of the jury").

As relevant to this appeal, a person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 29.02(a)(1) (West 2011). "Bodily injury" means physical pain, illness, or any impairment of a physical condition. *Id.* § 1.07(a)(8) (West Supp. 2012). A person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." *Id.* § 31.03(a) (West Supp. 2012). An appropriation of property is unlawful when "it is without the owner's effective consent." *Id.* § 31.03(b)(1).

Medford testified that Hill hit her, punched her, and choked her while he attempted to grab her purse and that the hits and punches hurt. Both Medford and Turner testified that Medford's hands were bleeding. The officer responding to the scene testified that Medford told him she had a pain in her chest. Medford also testified that Hill took her property, including her purse, phone, and wallet, more than fifteen hundred dollars, and her children's social security cards and birth certificates, and that she did not want him to take her things. Turner testified that Medford was attempting to prevent the man driving the car from leaving and yelled that she was being robbed.

Hill asserts that Medford's testimony about her property was not corroborated and was not credible. However, it was the role of the jury to judge the credibility of the testimony, and we must defer to that determination. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899; *Chambers*, 805 S.W.2d at 461. Reviewing all the evidence in the light most favorable to the jury's verdict, we conclude a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667. We resolve Hill's sole point of error against him

The trial court's judgment is affirmed.


/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE


Do Not Publish
TEX. R. APP. P. 47

120222F.U05


–6–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

SAMUEL LEE HILL, Appellant

No. 05-12-00222-CR　　　V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. F11-70789-Q.
Opinion delivered by Justice Fillmore,
Justices O'Neill and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 15th day of July, 2013.


/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE