

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00076-CR

Phillip **JACKSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 421st District Court, Caldwell County, Texas
Trial Court No. 2012-108
The Honorable Todd Alexander Blomerth, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
            Marialyn Barnard, Justice
            Rebeca C. Martinez, Justice

Delivered and Filed:  October 23, 2013

AFFIRMED AS MODIFIED

Phillip Jackson appeals his conviction for assault involving family violence. In three issues, Jackson contends (1) the evidence is insufficient to support his conviction; (2) his sixty-year sentence exceeds the authorized punishment for a third degree felony; and (3) the judgment should be modified to properly reflect a conviction for a third degree felony. We hold that the evidence is sufficient to support Jackson's conviction and that his sentence was authorized. However, we modify the judgment to reflect a conviction for a third degree felony and affirm the judgment in all other respects.

Jackson was charged by indictment for intentionally, knowingly, or recklessly causing bodily injury to Doris Brown by striking her with his hand in an incident involving domestic violence. At trial, Brown testified that she and Jackson were dating and had moved in together. On the evening of the incident, she and Jackson were having drinks at home when, according to Brown, they started arguing about money. Jackson jumped up and began screaming, yelling and cursing at her, and then started choking her. When she walked out of the room a couple of times, Jackson followed her and continued cursing, screaming, and threatening her. According to Brown, Jackson "knocked the heck out of her" when he hit her on her face with the back of his hand. Brown testified that she dropped to the floor "like a rock," but did not know what part of her body hit the floor. She testified that at first her face hurt, but then it went numb. Realizing she was hurt, Brown asked Jackson to take her to the hospital. He drove her to the hospital, but told her not to tell anyone he had hit her. When they got to the hospital, Brown told an officer that Jackson had slapped her a little too hard. She was transported to another hospital to have surgery for a broken jaw. Brown denied that she was trying to get the phone away from Jackson at the time she was hurt.

Jackson also testified in his own defense. According to Jackson, although he lived with Brown, he considered both Brown and a woman named Dimple Wright to be his girlfriends. Jackson testified that Brown was aware of his relationship with Wright. On the evening in question, he and Brown were drinking at home when Wright called him. He did not answer the first time Wright called, but did answer when she called a second time, which was a little after 10:00 p.m. According to Jackson, Brown became angry and told him to hang up the phone. When she jumped up and tried to take the phone out of his hand, she fell over the table. According to Jackson, he was trying to defend himself and told her, "Stop, before you hurt yourself." Jackson testified that when Brown fell, she hit the table. She told him she had pain in her jaw and needed to go to the

hospital. According to Jackson, he did not strike Brown nor did he tell her not to tell anyone what had happened. When he heard Brown tell the nurse in the emergency room that he had hit her, he was surprised. When they were taken to an examination room at the hospital, he asked Brown why she had said that. According to Jackson, Brown said he needed to take responsibility. A police officer then came to the hospital, took Jackson aside, and asked him what had happened. Jackson told the officer that Brown had jumped up and tried to slap the phone out of his hand, but instead fell and hurt herself. Jackson was then arrested. He called Wright from the jail and told her he was in jail for assaulting Brown. Jackson was shown records showing the call he made to Wright while in custody. The records also showed Wright called him earlier that evening at 10:16 p.m. However, he and Brown arrived at the emergency room at 10:14 p.m.

Wright, who testified in Jackson's defense, stated that although Brown was a friend of hers, Brown did not know about Wright's relationship with Jackson. According to Wright, on the evening in question, Jackson called her at about 10:00 p.m., but she missed the call. She then called him back at 10:30 p.m. and talked to him. She could hear Brown in the background telling Jackson to get off the phone. She heard Jackson tell Brown, "Stop. You're going to hurt yourself." Then the phone went dead. According to Wright, Jackson called her from the jail the next morning and told her he had broken someone's jaw. Wright stated she was testifying to try and get Jackson out of trouble.

Three police officers also testified at trial. Officer Jose Acuna testified that he was dispatched, along with his partner Sergeant Jeff Ferry, to the hospital emergency room regarding a disturbance. He noticed people arguing in one of the treatment rooms. Jackson and Brown were in the room. He took Jackson to the lobby to interview him. Jackson told him Brown was injured after she jumped on him. According to Officer Acuna, Jackson said he was trying to protect himself after Brown started hitting him. Jackson told him Brown had hit her mouth on Jackson's elbow.

Officer Acuna testified that Jackson never told him Brown had struck a table or that she had fallen to the floor and struck her jaw. Sergeant Ferry testified that he interviewed Brown at the hospital emergency room. Brown was upset and crying. Her jaw was swollen, and she had red marks on her. She appeared to him to be in pain. After speaking with Brown and then to Officer Acuna, it was determined that Jackson had assaulted Brown. The officers then arrested Jackson. Officer Aaron Miller did a follow-up investigation of the assault. After Brown had returned home from having surgery on her jaw, he went to her residence to interview her. According to Officer Miller, Brown was distressed, distraught, and upset. She looked like she had been crying, and her hands were shaking. She had difficulty speaking because her jaw was wired shut.

The emergency room nurse, David Indorf, testified that he did the initial triage at 10:29 p.m. on Brown. She was complaining of jaw pain. She was accompanied by a person she identified as her husband. She told him, "My husband slapped me harder than he usually does." When she said this, the man with her said nothing. Indorf called the police. Brown and Jackson started arguing, and both appeared to be angry. A CT scan showed a fracture of Brown's jaw in three places. She was transferred to another hospital for surgery.

Carol Smith was one of the EMS paramedics who transferred Brown to another hospital. Brown told Smith she was hit in the face several times by her husband.

In his defense, Jackson presented the testimony of Dr. Richard Harding, a biomechanics expert. Dr. Harding concluded that the three fractures to Brown's jaw could not have been caused by a human's hand alone. A hand would break before the bone on the jaw would break. The only explanation would be that she struck something hard, perhaps in a fall.

In his first issue, Jackson argues that the evidence is insufficient to prove he caused Brown's injury as alleged in the indictment and required by the jury charge. In a federal due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the

verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 1763 (2012). Therefore, on appellate review, we determine whether based on "cumulative force of all the evidence" the necessary inferences made by the trier of fact are reasonable. *Adames*, 353 S.W.3d at 860. We conduct this constitutional review by measuring the evidentiary sufficiency with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.*

Jackson was charged with assault involving family violence. The Penal Code states that a person commits the offense of assault if he intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2011). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (West Supp. 2012). In making his legal sufficiency argument, Jackson depends on his testimony that he did not hit Brown with his hand and on testimony from his expert, Dr. Hardin, who stated that the fractures to Brown's jaw could not have been caused by a human hand. Thus, according to Jackson, because Brown's injury was a broken jaw, he could not be guilty of having caused it by hitting her with his hand. Jackson acknowledges that Brown's testimony that he hit her with his hand amounts to some evidence supporting the jury's finding, but he argues there was, nevertheless, not sufficient evidence for a rational juror to find him guilty beyond a reasonable doubt.

However, as pointed out by the State, all the jury had to believe in order to convict Jackson of assault was that he hit her in the face with his hand and it caused her pain. At trial, Brown testified that (1) Jackson hit her in the face with the back of his hand; (2) when he hit her, she dropped to the floor "like a rock;" and (3) when he struck her, it hurt. Thus, in order to find Jackson guilty of assault, the jury did not necessarily have to believe Brown's jaw fracture was caused by

Jackson hitting her in the face with his hand. We hold the evidence is legally sufficient and, therefore, overrule Jackson's first issue on appeal.

In his second issue on appeal, Jackson contends his sixty-year sentence exceeds the authorized punishment for a third degree felony. In making this argument, Jackson concedes that because it was alleged he had a prior conviction for assault involving family violence, the offense for which he was charged was enhanced to a felony of the third degree under section 22.01(b)(2)(A) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A) (West 2011). Further, Jackson acknowledges the indictment alleged six prior felony convictions for purposes of enhancement of punishment under section 12.42(d) of the Texas Penal Code. *See id.* § 12.42(d) (West Supp. 2012). And, Jackson agrees that (1) he stipulated that he was the same person named in the prior convictions and (2) he entered pleas of true to the enhancement paragraphs of the indictment. Moreover, documentary evidence of the prior convictions was admitted in evidence, and the trial court noted on the record that Jackson had pled true to the enhancement allegations. Nevertheless, Jackson argues that his sentence is unauthorized because no finding of true was made by the trial court or the jury as to the prior convictions alleged for purposes of enhancement of punishment. Thus, according to Jackson, the only authorized range of punishment was two to ten years imprisonment as required for a third degree felony, rather than the enhanced range of punishment of twenty-five to ninety-nine years. The State points out, however, that not only did the trial court find the enhancement allegations true when it received the pleas; admitted the stipulation and documentary evidence of prior convictions; and instructed the jury on the enhanced punishment range, but the trial court also included findings of true to the enhancement paragraphs in the judgment. Further, the jury was not required to make findings as to the validity of the enhancements because it was not a contested issue. *See Vance v. State*, 970 S.W.2d 130, 133 (Tex. App.—Dallas 1998, no pet.); *see also Chandler v. State*, 21 S.W.3d 922,

923 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (explaining that a plea of "true" to enhancement paragraphs relieves the State of the burden of proof on those issues). We therefore agree with the State and find that Jackson's sentence of sixty years was not excessive or unauthorized. We overrule Jackson's second issue.

In his third issue, Jackson requests this court reform the judgment to properly reflect a conviction for a third degree felony. In fact, Jackson was charged with and convicted of the offense of assault involving family violence which, because of his prior convictions for assault involving family violence, was elevated to a third degree felony. The trial court's judgment, however, reflects Jackson was convicted of a first degree felony. An intermediate appellate court is authorized to reform an erroneous judgment and affirm as modified. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993). Thus, we modify the judgment to reflect a conviction for a third degree felony and affirm the judgment in all other respects.

Karen Angelini, Justice

Do not publish