**Affirmed and Opinion Filed July 31, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00903-CR

### JOSEPH STANLEY SKUPIEN, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause No. F12-41699-L**

## MEMORANDUM OPINION

Before Chief Justice Wright and Justices Bridges and Holcomb
Opinion by Justice Holcomb[1]

Joseph Stanley Skupien was charged by indictment with burglary of a habitation. TEX.

PENAL CODE ANN. § 30.02(a)(3) (West 2011). He waived a jury and agreed to a bench trial. The

trial court found him guilty. After appellant pleaded true to one enhancement paragraph, the trial

court sentenced him to fifteen years' imprisonment. In one issue, appellant claims the evidence

is insufficient to support the conviction. We affirm the trial court's judgment.

### BACKGROUND

Barbara Ayo, a neighbor of the 89-year-old complainant Lillie Morrin, testified she had

awakened at approximately 6:00 a.m. on September 30, 2012. She looked through the blinds on

her back window and saw a flashlight shining on the glass panels of Morrin's garage. Ayo knew

---

[1] They Hon. Charles R. Holcomb, Retired Judge, sitting by assignment.

Morrin was out of town, and she immediately called 911. Ayo saw an individual, whom she later recognized as appellant, walk to a truck that was parked in Morrin's carport and then to the side of Morrin's home. Ayo identified appellant to the 911 operator. Appellant was pointing his flashlight into a side window and walked down the alley with his flashlight facing downward "like he was looking for something." Appellant then returned to Morrin's home and entered a gate onto the backyard patio. Ayo did not see appellant enter the house or carrying anything from the property. She heard the police shout, "Come out with your hands up."

Lillie Morrin testified she had visited appellant's parents to let them know she was leaving town for an extended period of time to visit her sister in California. Morrin testified that appellant lived in an RV in his parents' backyard. Morrin testified that appellant may have been around when she told his parents she was leaving town because he was "in and out." Morrin testified, however, that she did not ask him to look after her home or provide him with a key. Morrin did not give appellant permission to be in her home or pick up her mail, nor did appellant ever mention picking up Morrin's mail for her. Morrin testified that she had moved to Mesquite from Galveston and had not fully unpacked. When she checked her belongings, the only thing she discovered missing was a record player. She agreed her home was not disturbed or ransacked, nor had anyone gone through her drawers. Morrin testified that in the past appellant had given her things for her home, he sold her a wooden recliner for $10.00 and a small table for $2.00 that she had on her patio.

Manuel Morrin testified he is Morrin's brother. He was to watch over Morrin's house while she was out-of-town, as he had done during the preceding three years. Manuel went to Morrin's house almost every day, checked the house, and picked up her mail because she received a lot of magazines. Morrin had someone who mowed the lawn for her. Manuel testified that after he was notified that the police had been to Morrin's house, he went by the

house.  He found a bathroom window open all the way and a pink stepladder leaning against the brick wall.  On his previous visits to the house, no windows were open.

Mesquite police officers Hatsady Thongsavat and Crabtree responded to the 911 call to Morrin's house. Thongsavat testified that the officers parked their patrol units about two houses away and approached Morrin's house on foot from the front.  They walked towards the back, shining their flashlights into the windows as they passed.  When they reached the back of the house, they found appellant holding a flashlight and exiting through the sliding glass door.  They also saw a ladder under an open bathroom window.  Appellant told the officers he was watching over Morrin's house for her and he was simply investigating the open windows he had observed. The officers took appellant into custody and "swept" Morrin's house.  They did not find anyone else inside nor did they find the house to be in disarray but they did note that two other windows were also open.

Mesquite police sergeant Wes Talley ascertained that appellant was not authorized to be in Morrin's house, and the officers arrested appellant.  Talley also testified that he received a letter from appellant. The letter, which was admitted as State's Exhibit no. 8, was addressed to Talley, Thongsavat, and Crabtree.  In the letter, appellant claimed to be a "part time resident" at Morrin's home.   In the letter, appellant also stated he did not call the police because he wanted to investigate the matter himself in case he was "just being delusional."

Appellant testified that Morrin approached him and his parents while they were in their garage and told them about her trip.  Appellant said he jokingly asked Morrin if she wanted him to care for her lawn.  Morrin replied, "No.  Just keep an eye on my house for me."  Appellant testified that he gave, not sold, Morrin things such as furniture because she was a "broke old woman" whom he loved even though he had only known her about a year.  Appellant testified that on the night he entered the house, he had intermittently smoked methamphetamine from

–3–

about 2:00 a.m. to 6:00 a.m. He intended to do laundry after his father awoke, which was between 6:00 a.m. and 6:30 a.m. He retrieved his clothes from the trunk of his car and put them on the trunk and the fence of his parents' house. He then went to urinate in his parents' yard and, while doing so, he became suspicious when he noticed an open window on Morrin's house. He retrieved a flashlight from his truck and flashed the light in Morrin's garage windows. He saw boxes he did not believe had been there recently. Appellant then went to the side of the house and, after noticing open windows, began to beat on the windows and said, "You better come out or I'm gonna call the police." Appellant testified he thought he had seen a person or a light inside the home. He went to the front door and began to ring the doorbell. He noticed the mail box, which was on the front porch, was full. Fearing this would signal an unoccupied home, he took Morrin's mail, intending to give it to her, and he set it on the trunk of his vehicle. Appellant testified he tried to call his father and Morrin's home phone, but did not get an answer. He debated about whether to call police, but hesitated due to his history with law enforcement and fear of going to jail. So, he stopped to smoke a cigarette.

Appellant saw a light go on in the home of the neighbor on the opposite side of Morrin's yard, and he saw her standing by a window talking on the telephone. Appellant thought, "Okay. I have a witness." He waved at the neighbor, climbed a ladder he had positioned by the bathroom window, and eased himself through the window onto the bathroom counter. Appellant walked through the house, but found no one. When he saw a flashlight, he knew the police had arrived and approached them to explain he went in the house because Morrin had left her windows open and he believed he had seen someone inside. Appellant testified he had no knowledge of the record player Morrin said was missing. During cross-examination of appellant, the State introduced into evidence State's Exhibit no. 9, a letter appellant had written to his father. In the letter appellant asked his father to fill out a change of address card in

–4–

appellant's name at the post office to reflect Morrin's address and back-date it to before "Sept. 12" so that when appellant went to trial, he would have received mail at Morrin's address.

Marquita Fitzgerald testified in rebuttal that she is the neighbor who lives on the opposite side of Morrin's house. Fitzgerald denied that appellant waved to her on the morning of the burglary and had no knowledge he went into the house.

**STANDARD OF REVIEW**

We review a challenge to the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). In conducting our review, we consider all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667. This standard recognizes the "responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weight the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see also Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). The trial court, as finder of fact, is the sole judge of the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *See Wise v. State*, 364 S.W.3d 900, 903, 905 (Tex. Crim. App. 2012). We defer to the fact finders determinations of credibility and may not substitute our judgment for that of the fact finder. *See Jackson*, 443 U.S. at 319; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based on the cumulative force of all the evidence when considered in the light most favorable to the verdict." *See Wise*, 364 S.W.3d at 903; *see also Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).

**ANALYSIS**

In his sole issue, appellant contends the evidence is legally insufficient to support his conviction. Appellant claims the evidence supports at most a finding of guilt of criminal trespass, but is insufficient to show he entered Morrin's home with the intent to commit theft. The State responds that the trial court, as sole judge of the evidence, was free to disbelieve appellant's claim that he did not enter Morrin's house with the intent to commit theft.

To obtain a conviction for burglary of a habitation, the State had to prove beyond a reasonable doubt that: (1) appellant; (2) entered a habitation; (3) without the effective consent of Morrin; (4) in order to commit or attempt to commit a theft. *See* TEX. PENAL CODE ANN. § 30.02(a)(3). The evidence presented showed appellant was inside Morrin's home, without her permission, in the early morning hours, and that Morrin discovered a record player had been taken. Although appellant testified he was in the home because he believed someone else had entered the home and he was trying to check it out, the trial court, as fact finder, was free to determine appellant's testimony was not credible.

Reviewing all of the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found beyond a reasonable doubt that appellant entered Morrin's home with the intent to commit or attempt to commit theft. *See id.*; *Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667. Thus, the evidence is sufficient to support the conviction. We overrule appellant's sole issue.

We affirm the trial court's judgment.

Do Not Publish
TEX. R. APP. P. 47
130903F.P05

/Charles R. Holcomb/
CHARLES R. HOLCOMB
JUSTICE, ASSIGNED

–6–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOSEPH STANLEY SKUPIEN, Appellant

No. 05-13-00903-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5, Dallas County, Texas
Trial Court Cause No. F12-41699-L.
Opinion delivered by Justice Holcomb, Chief Justice Wright and Justice Bridges participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 31, 2014