

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00619-CR

Bryan William **COLUMBUS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 8, Bexar County, Texas
Trial Court No. 639308
Honorable Timothy Johnson, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:       Patricia O. Alvarez, Justice
               Luz Elena D. Chapa, Justice
               Irene Rios, Justice

Delivered and Filed: May 22, 2024

AFFIRMED

A jury convicted appellant Bryan William Columbus with the offense of assault causing bodily injury. On appeal, Columbus argues the evidence is legally insufficient to disprove he acted in self-defense, and the judgment should be modified to delete the family violence finding. We affirm the judgment.

## BACKGROUND

Columbus was charged by information with assault causing bodily injury after police arrested him for striking Amber Estrada with his hand. At trial, the jury heard testimony from San

Antonio Police Officer Todd M. Kalk and Detective Victoria Jimenez, who had been dispatched to Amber's apartment after she had called 911. Amber told the 911 operator Columbus had "put his hands on [her]" multiple times and was refusing to leave her apartment. The jury also heard the audio recording of Amber's 911 call, saw pictures depicting bruising and scratches around her neck and cheeks, and heard testimony from Columbus, who claimed he was defending himself from Amber.

The jury found Columbus guilty, and the trial court sentenced him to one-year confinement, probated for one year. The judgment also contained an affirmative finding of family violence. Columbus now appeals.

**SELF–DEFENSE**

Columbus contends the evidence is legally insufficient to disprove he acted in self-defense. For support, he relies on his testimony that he acted in self-defense after Amber woke him up in the middle of the night, pushed him out of bed, and yelled at him "to get out." He testified when she struck him with closed fists, he grabbed her and pushed her away. According to Columbus, the State did not produce any evidence to refute this self-defense evidence.

***Standard of Review***

"[I]n a claim of self-defense . . . the defendant bears the burden to produce evidence supporting the defense, while the State bears the burden of persuasion to disprove the raised issues." *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). "The defendant's burden of production requires him to adduce some evidence that would support a rational finding in his favor on the defense issue," whereas the State's burden of persuasion "requires only that the State prove its case beyond a reasonable doubt." *Id*. at 608–09 (quoting *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003)) (internal quotations omitted). This means:

[i]n resolving the sufficiency of the evidence issues, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt.

*Id*. at 609 (alterations in original) (quoting *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991)).

Additionally, self-defense is a fact issue for the jury to determine, and "[a] jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory." *Id.* (alteration in original) (quoting *Saxton*, 804 S.W.2d at 914) (internal quotation marks omitted). Moreover, under the general principles governing legal sufficiency, we remain mindful of "the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence," and we defer to the trier of fact's credibility and weight determinations. *Id*. at 608 (quoting *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011)) (internal quotation marks omitted). We also presume "the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution." *Id.*

### *Applicable Law*

"[Texas] Penal Code Section 9.31 provides that, subject to certain exceptions, a person is justified in using force against another 'when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force.'" *Id*. at 606 (quoting TEX. PEN. CODE § 9.31(a)). "The use of force is not justified in response to verbal provocation alone, or if the actor provoked the other's use or attempted use of unlawful force." *Id.* (citing TEX. PEN. CODE § 9.31(b)). "A 'reasonable belief' in this context is defined as 'one that would be held by an ordinary and prudent man in the same circumstances as the actor.'" *Id*. (quoting TEX. PEN. CODE § 1.07(a)(42)).

*Application*

Here, the jury heard testimony from Officer Kalk, who testified he had been dispatched to Amber's apartment after she had called 911 and reported Columbus had "put his hands on [her]" multiple times and was refusing to leave her apartment. Officer Kalk testified when he arrived at Amber's apartment, he detained Columbus and found Amber outside her apartment visibly upset with noticeable bruising around her neck and cheeks. The jury watched a recording of Officer Kalk's body camera, which showed Amber telling Officer Kalk Columbus had been staying with her when he slapped her twice with an open hand.

The jury also heard the recording of Amber's 911 call. During the call, Amber tells the 911 operator Columbus "put his hands on [her]" and slapped her multiple times. The jury also heard Amber and Columbus arguing while Amber was speaking to the 911 operator and Amber screaming, "Get off of me." During the call, Amber tells the operator Columbus was "still slapping me."

Detective Victoria Jimenez testified she was also dispatched to the scene, and when she arrived, she spoke to Columbus and Amber and took photographs of them to document any injuries. Detective Jimenez testified she did not observe any injuries on Columbus, but she observed blood underneath one of his fingernails on his right hand. She also testified she asked Columbus whether he had any injuries or was in any pain, and he stated he was not. As to Amber, Detective Jimenez testified she observed several bruises and scratches on Amber's face and neck, and she testified one of the scratches had broken the skin. The photographs she took of Columbus and Amber were admitted into evidence.

Finally, the jury heard testimony from Columbus, who testified Amber woke him up in the middle of the night and started pushing him out of the bed and throwing his cell phone at him. Columbus testified he left the bedroom and went to the living room to distance himself from her,

but Amber came into the living room and continued to scream at him. Columbus stated Amber started "tugging on me and pushing me," and then "she closed her hands and [] started hitting me" with closed fists. He testified he tried to avoid her and told her to stop hitting him until "I kind of grabbed her by her face and nudged her away, more or less." At that point, Amber called the police.

When viewing this evidence in the light most favorable to the prosecution and deferring to the jury's assessment of the credibility of the witnesses, the jury could have disbelieved Columbus's testimony and rejected his self-defense claim. *See id.* at 608–09. The jury could have also reasonably inferred Columbus assaulted Amber based on Officer Kalk and Detective Jimenez's testimony detailing Amber's injuries, the photographs depicting Amber's injuries, and the 911 recording revealing Columbus was assaulting Amber while she was on the phone with the police. And to the extent Columbus contends the State was required to produce evidence to refute his self-defense claim, we remain mindful our standard of review does not require us "to look to whether the State presented evidence which refuted appellant's self-defense testimony." *Id.* at 608. Rather, we must determine, after viewing all the evidence in the light most favorable to the prosecution, whether any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and would have found against appellant on the self-defense issue beyond a reasonable doubt." *Id.*

Here, the record does not indicate the jury was irrational in rejecting Columbus's testimony about his self-defense claim, and we may not substitute the jury's credibility determination of Columbus's testimony with that of our own. *See id.* Having viewed the evidence under the appropriate standard of review, we conclude the jury could have rationally rejected Columbus's self-defense claim and found a verdict of guilty beyond a reasonable doubt. *See id.* We therefore overrule Columbus's self-defense argument.

**AFFIRMATIVE FINDING OF FAMILY VIOLENCE**

Columbus next complains the trial court erred by including an affirmative finding of family violence in the judgment because the trial court did not orally pronounce an affirmative finding of family violence during sentencing. According to Columbus, when there is a conflict between the oral pronouncement of the sentence and the sentence in the written judgment, the oral pronouncement controls. Therefore, the judgment should be reformed to delete the finding.

In general, "[a] defendant's sentence must be pronounced orally in his presence." *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004). "The judgment, including the sentence assessed, is just the written declaration and embodiment of that oral pronouncement." *Id.* "When there is a conflict between the oral pronouncement of sentence and the sentence in the written judgment, the oral pronouncement controls." *Id.*

However, a finding of family violence is not a sentencing issue; instead, it is an issue determined by the trial court based on the evidence admitted during the guilt-innocence phase of trial. *See* TEX. CODE CRIM. PROC. art. 42.013 (requiring trial court to enter affirmative family violence finding if court determines offense involved family violence); *see also Butler v. State*, 189 S.W.3d 299, 302 (Tex. Crim. App. 2006) (holding trial court is statutorily obligated under article 42.013 to enter affirmative finding of family violence if during guilt phase of trial, it determines offense involved family violence). Article 42.013 of the Texas Code of Criminal Procedure requires the trial court to enter an affirmative finding of family violence in its judgment if, in the trial of an offense against a person, the trial court determines the offense involved family violence as defined by the Texas Family Code. *See* TEX. CODE CRIM. PROC. art. 42.013; *see also Butler*, 189 S.W.3d at 302. As explained by the Texas Court of Criminal Appeals, "the plain language of [article 42.013] assigns the responsibility for making the family-violence determination solely to the trial court[,]" and neither the statute nor the Texas Court of Criminal

Appeals have signaled an oral rendition of the trial court's family violence finding during sentencing is mandatory. We therefore reject Columbus's final argument. *See Meinzer v. State*, No. 02-23-00005-CR, 2023 WL 1100478, at *5–6 (Tex. App.—Fort Worth March 14, 2024, no pet.) (mem. op., not designated for publication) (rejecting appellant's argument trial court must orally pronounce its family violence finding during sentencing).

## CONCLUSION

Based on the foregoing, we affirm the trial court's judgment of conviction.

Luz Elena D. Chapa, Justice

Publish